**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WANG, VEN-JIAO (TONY), CHOU, YU-MEI, WANG, HSIUE-HUEI (TAMMY), and WANG, HSIN-JANG (JANIS), *individually and on behalf of the estate of Wang, Yung-Tsai*,

Plaintiffs,

v.

NEW MIGHTY U.S. TRUST, NEW MIGHTY FOUNDATION, and CLEARBRIDGE, LLC,

Defendants.

Civil Action No. 21-cv-03111

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION .... 1

ARGUMENT .... 3

I. DEFENDANTS' TIME-BAR DEFENSE IS PREMATURE AND IMPROPERLY SEEKS FACTUAL INFERENCES IN DEFENDANTS' FAVOR .... 3

A. Defendants' Timeliness Arguments Are Premature .... 4

B. Defendants Improperly Ask This Court To Draw Inferences In Their Favor .... 6

1. Defendants Have Not Met Their "Heavy Burden" Of Proving That The Establishment Of The NMUST Should Have Alerted Y.T. To Wrongdoing .... 6

2. Defendants Have Not Met Their "Heavy Burden" Of Establishing That Plaintiffs Were On Inquiry Notice Of Their Claims Outside The Limitations Period .... 8

3. Defendants Have Not Met Their "Heavy Burden" Of Establishing That Plaintiffs' Inquiries Were Not Reasonable .... 11

II. PLAINTIFFS' MISTAKE AND LACK OF AUTHORITY CLAIMS ARE GOVERNED BY LACHES AND ARE NOT TIME-BARRED .... 12

III. PLAINTIFFS' TAIWAN LAW CLAIMS ARE SUBJECT TO TAIWAN'S STATUTE OF LIMITATIONS .... 13

IV. EACH CLAIM IS BROUGHT ON BEHALF OF A PROPER PARTY .... 14

A. Rule 17 Permits Plaintiffs To Bring Their Claims Of Conversion And Unjust Enrichment In Their Individual Capacities .... 14

B. Equity Principles Allow Plaintiffs To Bring Claims On Behalf Of The Estate .... 16

V. THE BERMUDA JUDGMENT DOES NOT PRECLUDE THE LITIGATION OF ANY ISSUES RELATED TO THE NMUST .... 18

A. Ruling On Issue Preclusion Is Improper At This Stage .... 19

B. Defendants' Preclusion Argument Will Fail On A Motion To Dismiss .... 20

1. Defendants Fail To Establish That The Issues In This Case And The Bermuda Litigation Are Identical .... 20

**2. Defendants Fail To Establish That The Issues For Which They Seek Preclusion Were Essential To The Bermuda Judgment ..... 22**

**3. Defendants Fail To Show That Issues Were Actually Decided Following A Full And Fair Opportunity To Litigate And That Preclusion Was Foreseeable ..... 23**

**CONCLUSION ..... 25**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Best v. Kelly*,
39 F.3d 328 (D.C. Cir. 1994) ....15

*Bradley v. Nat'l Ass'n of Secs. Dealers Dispute Resolution, Inc.*,
433 F.3d 846 (D.C. Cir. 2005) ....12

*Bryson v. Gere*,
268 F. Supp. 2d 46 (D.D.C. 2003) ....20

*Capitol Servs. Mgmt. v. Vesta Corp.*,
933 F.3d 784 (D.C. Cir. 2019) ....11, 12

*Diamond v. Davis*,
680 A.2d 364 (D.C. 1996) ....4, 11

*Doe v. Howard Univ.*,
Civil Action No. 1:20-cv-01769 (CJN), 2022 U.S. Dist. LEXIS 55626 (D.D.C. Mar. 28, 2022) ....5

*Doe v. United States Dep't of Justice*,
753 F.2d 1092 (D.C. Cir. 1985) ....4

*Ekstrom v. Value Health*,
68 F.3d 1391 (D.C. Cir. 1995) ....13

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ....4

*Hawaiian Paradise Park Corp. v. Becker*,
314 F. Supp. 1133 (D.D.C. 1970) ....24

*Hunt v. Liberty Lobby, Inc.*,
707 F.2d 1493 (D.C. Cir. 1983) ....20

*Hurd v. District of Columbia*,
864 F.3d 671 (D.C. Cir. 2017) ....19, 23

*Ill. Farmers Ins. Co. v. Hagenberg*,
167 A.3d 1218 (D.C. 2017) ....21

*Jackson v. Cash (In re Cash)*,
No. 16-00663, 2018 Bankr. LEXIS 3322 (Bankr. D.D.C. Oct. 29, 2018) ....12

*Jones v. Rogers Mem'l Hosp.*,
442 F.2d 773 (D.C. Cir. 1971) ....................4

*Labovitz v. Wash. Times Corp.*,
172 F.3d 897 (D.C. Cir. 1999) ....................15

*Lans v. Adduci Mastriani & Schaumberg, L.L.P.*,
786 F. Supp. 2d 240 (D.D.C. 2011) ....................22

*Malewicz v. City of Amsterdam*,
517 F. Supp. 2d 322 (D.D.C. 2007) ....................5, 12

*McQueen v. Woodstream Corp.*,
244 F.R.D. 26 (D.D.C. 2007) ....................11

*Minebea Co. v. Papst*,
No. 97-0590 (PLF), 2003 U.S. Dist. LEXIS 26664 (D.D.C. Feb. 4, 2003) ....................20, 22, 25

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) ....................24, 25

*Penn Mut. Life Ins. Co. v. Abramson*,
530 A.2d 1202 (D.C. 1987) ....................13

*Price v. Crestar Sec. Corp.*,
44 F. Supp. 2d 351 (D.D.C. 1999) ....................15

*In re Pro. Air Traffic Controllers Org.*,
23 B.R. 271 (D.D.C. 1982) ....................12

*Rearden v. Riggs Nat'l Bank of Wash., D.C.*,
677 A.2d 1032 (D.C. 1996) ....................17

*Richards v. Mileski*,
662 F.2d 65 (D.C. Cir. 1981) ....................4

*Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*,
4 F.3d 244 (4th Cir. 1993) ....................19

*Robinson v. Samuel C. Boyd & Son, Inc.*,
822 A.2d 1093 (D.C. 2003) ....................15

*Sandza v. Barclays Bank PLC*,
151 F. Supp. 3d 94 (D.D.C. 2015) ....................10

*Sea Search Armada v. Republic of Colom.*,
821 F. Supp. 2d 268 (D.D.C. 2011) ....................5

*Sissel v. U.S. Dep't of Health & Human Servs.*,
760 F.3d 1 (D.C. Cir. 2014) ........................................6

*Sloth v. Constellation Brands, Inc.*,
924 F. Supp. 2d 461 (W.D.N.Y. 2013) ........................................19

*Trudel v. SunTrust Bank*,
223 F. Supp. 3d 71 (D.D.C. 2016) ........................................15

*Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*,
531 F. Supp. 3d 153 (D.D.C. 2021) ........................................20

*Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*,
268 F. Supp. 3d 196 (D.D.C. 2017) ........................................4

*Woodland Drive LLC v. Courtovich*,
Civil Action No. 1:19-cv-00750 (CJN), 2021 U.S. Dist. LEXIS 187721
(D.D.C. Sep. 30, 2021) ........................................11

**Statutes**

D.C. Code § 20-303(b)(5) (2007) ........................................17

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ........................................1

Fed. R. Civ. P. 17(a)(3) ........................................17

Restatement (Second) of Judgments § 27 cmt. c ........................................22

Restatement (Second) of Trusts § 282(3) ........................................16

## INTRODUCTION

It is well-settled that courts must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, Defendants do not dispute that most of the relevant considerations favor amendment here, including Plaintiffs' good faith and the lack of undue delay or prejudice. The only arguments Defendants raise are based on the purported futility of Plaintiffs' amendments, but these arguments fall well short of carrying Defendants' burden.

In fact, many of Defendants' arguments in the Opposition brief ("Opp'n") are not even cognizable at this early stage, as they ask this Court to make highly factual determinations and to draw inferences in *Defendants'* favor. For example, one of Defendants' key arguments is that this lawsuit is untimely because Plaintiffs supposedly knew, or should have known, that the terms of the New Mighty U.S. Trust ("NMUST") excluded them as beneficiaries well before August 2019—when Plaintiffs allege they first learned about this exclusion. But this ignores the extensive authority that inquiry notice is generally not suitable for resolution on a motion to dismiss (let alone a motion for leave to amend) because it requires a highly fact-intensive inquiry into what a party knew and when. Defendants' statute of limitations, issue preclusion, and other arguments are likewise improper because they ask this Court to adjudicate Defendants' affirmative defenses prematurely, ignore Plaintiffs' factual allegations, and draw inferences in *Defendants*' favor.

Defendants' time-bar defenses are also legally flawed. Plaintiffs have alleged extensive facts reflecting the efforts of certain individuals to conceal the true nature of the NMUST and justifying Plaintiffs' delay in discovering these misdeeds. Defendants bear a "heavy" burden of establishing this affirmative defense based on inquiry notice, and the D.C. Circuit has made clear that a motion to dismiss on statute of limitations grounds must be denied if any reasonable person could disagree about the date the limitations period began to run. Plaintiffs' equitable mistake and

lack of authority claims are governed by the doctrine of laches and, even if they were not, are still timely for the same reasons. As for Plaintiffs' Taiwan law claims, this Court should apply Taiwan's 15-year statute of limitations, which constitutes a *substantive*, not procedural, component of the Taiwan Civil Code—an interpretation of Taiwanese law that Defendants do not even address.

Defendants' real-party-in-interest argument fares no better. Defendants dispute that Plaintiffs can properly state claims in their individual capacities and, therefore, contend that Plaintiffs are not real parties in interest under Rule 17. That is not how Rule 17 is designed to work, however. Rule 17 is satisfied so long as an individual asserts rights for his own benefit, without regard to whether there is a dispute that the individual *actually possesses* the rights asserted. As for the claims Plaintiffs assert on behalf of Y.T.'s estate, Defendants essentially concede that equitable principles may allow a beneficiary to sue where, as here, there is no fiduciary available to sue on their behalf. Defendants' attempt to block Plaintiffs from exercising this equitable right is premised on a flawed interpretation of both D.C. probate law and the equitable principles invoked by Plaintiffs.

Finally, Defendants wrongly contend that Y.T.'s heirs should be precluded from ever litigating any claims related to the NMUST, a D.C. trust, simply because a Bermuda court recently issued a ruling in a suit involving Plaintiffs' Bermuda law claims against different defendants concerning Bermuda trusts. *See Wong, Wen-Young v. Grand View Priv. Tr. Co.*, 2018 No. 44 (Berm. S. Ct., June 22, 2022) (the "Bermuda litigation"). Although Defendants claim there is a common "factual thesis" between that case and the instant lawsuit, this general connection falls far short of satisfying Defendants' burden to show that the issues adjudicated in the Bermuda litigation were "identical" and the other elements necessary for issue preclusion. In fact, the Bermuda court itself recognized the irrelevance of the NMUST to the issues before it when it

*denied* a request for discovery into the NMUST on the basis that it was "not an essential or even an important piece of the jigsaw."

For all of these reasons, the Court should grant Plaintiffs' motion for leave to amend and reject Defendants' premature attempt to adjudicate this case on the merits at the pleadings stage.

## ARGUMENT

### I. DEFENDANTS' TIME-BAR DEFENSE IS PREMATURE AND IMPROPERLY SEEKS FACTUAL INFERENCES IN DEFENDANTS' FAVOR

The Complaint and Proposed First Amended Complaint ("PFAC") allege that the Four Directors—acting in concert with their representatives—engaged in a long-term scheme to conceal from Y.T. and Plaintiffs material information about the NMUST, including facts that would have revealed that the NMUST excluded Plaintiffs as beneficiaries. (*See, e.g.*, Compl. ¶¶ 40-51, 63-69, 76-79.) This scheme included not only providing false and misleading assurances designed to confuse Plaintiffs about their rights in the trust and cut off further inquiry, but also withholding and discarding pertinent documents and information regarding the trust. (*See id.*; PFAC ¶¶ 7-8, 35-36, 40-44, 62-63, 72-77, 83-86, 89-95.) The scheme was successful, and it was not until August 2019, with assistance from counsel, that Plaintiffs were able to uncover enough details to consider bringing an action. (Compl. ¶ 80; PFAC ¶ 96.) Nevertheless, Defendants ask this Court to disregard Plaintiffs' allegations regarding this scheme and dismiss Plaintiffs' claims at the pleading stage on statute of limitations grounds. (Opp'n at 21.) This argument fails for two principal reasons: (i) it prematurely asks for a highly fact-specific determination on a motion to dismiss standard; and (ii) it improperly asks the Court to construe inferences in Defendants' favor and ignore key factual allegations asserted by Plaintiffs.

### A. Defendants' Timeliness Arguments Are Premature

Statute of limitations is an affirmative defense, which defendants bear the burden of proving. *Firestone v. Firestone*, 76 F.3d 1205, 1210 (D.C. Cir. 1996). The D.C. Circuit, consistent with "an overwhelming line of authority," finds an "inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense," as doing so "often imposes an undue burden on the trial court and impedes the orderly administration of the lawsuit." *Richards v. Mileski*, 662 F.2d 65, 73 n.13 (D.C. Cir. 1981). A court may dismiss on statute of limitations grounds only where the "face of the complaint" unambiguously proves that the action is time-barred. *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).

Thus, if any reasonable person could disagree about the date the limitations period began to run, the motion to dismiss must be denied. *Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc*., 268 F. Supp. 3d 196, 204 (D.D.C. 2017). Moreover, where a defendant is arguing inquiry notice, the burden on a motion to dismiss is a "heavy" one, *Moldea v. Ovitz*, No. 18-cv-00560 (CRC), 2019 U.S. Dist. LEXIS 18761, at *11 (D.D.C. Feb. 6, 2019), as this defense involves a highly fact-intensive inquiry that is generally not suitable for resolution on a motion to dismiss. *See also*, *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017). That burden is not met where, as here, there are robust factual allegations regarding successful acts of concealment and disputed factual questions as to the reasonableness of an investigation in light of those acts. *See, e.g.*, *Firestone*, 76 F.3d at 1210. Such questions are classic fact issues, reserved either for the jury or, at earliest, summary judgment. *See Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 775 n.2 (D.C. Cir. 1971) (per curiam) (issue of inquiry notice "is properly one for the trier of fact, save for the exceptional case when it can be established that there is no material issue of fact."); *Diamond v. Davis,* 680 A.2d 364, 370 (D.C. 1996) (holding that notice inquiry is usually a jury question).

Here, Defendants seek a pre-discovery determination of their affirmative defense based on inquiry notice, which requires fact-specific analysis of, and credibility determinations on: (i) what Y.T. knew about the meaning and effect of the terms of the NMUST, and when Plaintiffs learned this information; (ii) the extent to which Y.T. and Plaintiffs received misleading assurances regarding this information; (iii) the extent to which Defendants and/or others concealed and/or misled Plaintiffs about the NMUST's terms; and (iv) whether Plaintiffs exercised reasonable diligence. These disputed issues will require further fact development beyond the initial pleadings stage and cannot be resolved on a motion for leave to amend a complaint. *See Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 335 (D.D.C. 2007). Defendants' cases lend no support to their position. Indeed, in the only cited case arguably analogous to the circumstances here, this Court rejected the statute of limitations defense as "not appropriate for resolution on a motion to dismiss . . . because the defense does not appear on the face of the Amended Complaint." *Id*. at 335 (cited Opp'n at 34.). This Court should do the same.

The remaining cases Defendants cite (Opp'n at 34) are readily distinguishable. In each case, the allegations in the complaint made clear that the plaintiffs were aware of the underlying harm and its cause at a date that made the claims untimely. *See Doe v. Howard Univ.*, No. 1:20-cv-01769 (CJN), 2022 U.S. Dist. LEXIS 55626, at *10, *24 (D.D.C. Mar. 28, 2022) (finding that student had reason to investigate whether university improperly hired professor who sexually assaulted her shortly after she suffered the sexual assault); *Sea Search Armada v. Republic of Colom.*, 821 F. Supp. 2d 268, 272 (D.D.C. 2011) (finding claim untimely because plaintiff "clearly knew" the Colombian Parliament breached agreement to let it collect treasure when the parliament passed a law specifically "eliminating all of [plaintiff's] property rights in the treasure").

### B. Defendants Improperly Ask This Court To Draw Inferences In Their Favor

It is black-letter law that, on a motion to dismiss (or here, a motion for leave to amend), the court must take all factual allegations in the complaint as true and construe all factual inferences in the light most favorable to the plaintiff. *See*, *e.g.*, *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). Yet, Defendants' argument that Plaintiffs knew (or should have known) about their exclusion from the NMUST well before August 2019 ignores Plaintiffs' factual allegations and improperly draws inferences *against* Plaintiffs and in favor of Defendants.

#### *1. Defendants Have Not Met Their "Heavy Burden" Of Proving That The Establishment Of The NMUST Should Have Alerted Y.T. To Wrongdoing*

Defendants argue that Y.T. should have done more to "ensure[] that the NMUST documents reflected his alleged intentions" when the Trust was established in 2005. (Opp'n at 23-24.) But this argument requires the Court to reject one of Plaintiffs' most fundamental allegations—that Y.T. was genuinely mistaken about the terms of the NMUST. (Compl. ¶¶ 83-86; PFAC ¶¶ 101-105.) If, as Plaintiffs allege, Y.T. mistakenly believed that the trust reflected his intentions, he had no reason to be suspicious of its contents. And because nothing in the Amended Complaint supports an inference that Y.T. should have known about his mistake or that he had reasons to doubt his own understanding, Defendants' argument that he should have second-guessed himself falls flat. Tellingly, Defendants fail to cite a single case finding that a mistaken trust grantor (or plaintiff of any kind) is on inquiry notice the moment he makes a mistake.

Defendants also ignore that, while the establishment of the NMUST involved the transfer of significant assets, it was not seen by Y.T. as an especially significant transaction. Y.T. believed and was told that the trust was established as a means to replace Y.T.'s existing arrangement with Mr. Hung due to the latter's retirement; it was not intended to diminish Y.T.'s control over his assets or to exclude his heirs as beneficiaries. (PFAC ¶ 32.) Under these alleged facts, a reasonable

person in Y.T.'s shoes would not have been alerted to any possible wrongdoing when the trust was established. This is especially true in light of the numerous attempts, discussed *infra*, made by the Four Directors and their representatives to hide the truth from Y.T.

Rather than tackle allegations like these head-on, Defendants argue that an act of concealment should be seen as a "red flag," triggering more, not less, scrutiny. (Opp'n at 29.) But these arguments ask the Court to draw negative inferences against Y.T. and Plaintiffs, including that Y.T. would have expected to review and directly supervise the work of his advisors; that he normally did work with lawyers on transactions; and that it was unreasonable at the time of the transaction for Y.T. to trust that his niece and his longtime advisor would not participate in a scheme designed to ferret away his fortune and legacy from his heirs. Defendants also ask this Court to ignore Plaintiffs' allegations regarding the undue influence exerted over Y.T. at the time of the transaction. For example, Defendants ask the following hypothetical:

> If a successful and competent executive (YT) were excluded by one of his employees (Susan) from meeting with lawyers about his assets worth billions, wouldn't that exclusion trigger an alarm in a reasonable executive's mind? And wouldn't that reasonable person, after having not been 'permitted to speak to a single lawyer' about his billion-dollar assets, hire independent counsel to figure out what was going on?

(Opp'n at 30.) At this stage, this Court should not be tempted by the inferences implied in Defendants' hypothetical and must draw inferences in Plaintiffs' favor, including that a reasonable person in his mid-to-late 80s who received no formal education; who could not speak, read, or write in the language of the trust documents; who did not use computers; and who had a long history of relying on trusted advisors for his financial affairs, would not suspect any wrongdoing in connection with the creation of a trust set up by a trusted family member and long-time family friend, which he perceived as a routine transition from the prior nominee structure in which those

assets were held, and which he never intended to be a means to alter the ultimate disposition of those assets. (*See* PFAC ¶¶ 59-60.)

### *2. Defendants Have Not Met Their "Heavy Burden" Of Establishing That Plaintiffs Were On Inquiry Notice Of Their Claims Outside The Limitations Period*

Defendants next argue that Y.T. and Plaintiffs had inquiry notice of their claims around 2010, when they learned about Winston's lawsuits challenging the Overseas Trusts. (*See* Opp'n at 24.) Defendants contend that Y.T. and Plaintiffs should have looked into the details of these lawsuits because the suits: (i) alleged that all of the assets held by the Overseas Trust belonged to Y.C. alone; and (ii) problems with the distribution of Y.C.'s estate were widely reported in the media in Taiwan and elsewhere. (*See* Opp'n at 24; MTD at 7-10, 22.) This argument is flawed.

*First*, the Complaint and PFAC allege that Plaintiffs were given multiple assurances that led them to conclude that lawsuits related to Y.C.'s estate had no relevance to them. For instance, prior to the creation of the NMUST, Y.T. assured Plaintiffs that all of his family members would benefit equally from the trust. (*See* PFAC ¶¶ 9, 38-40.) Operating under a misunderstanding about the terms and effect of the NMUST, Y.T. also drafted various Wills and Declarations between 2009 and 2011 (several years *after* the trust was established), which not only memorialized his intent that all of his children benefit equally from his assets, but sent a clear, unequivocal signal to his family that, at least in Y.T.'s mind, the assets in the trust remained under his control. (PFAC ¶¶ 64-70.)

Certain of the Four Directors and their representatives also falsely and misleadingly assured Plaintiffs that Y.T.'s understanding of the NMUST's terms was correct. For example, at a meeting held in January 2009, William told Tony, Tammy, and Janis that they would "eventually receive substantial annual distributions from the Overseas Trusts." (PFAC ¶ 90.) These assurances of an eventual payment dissuaded inquiry into any wrongdoing and perpetuated Y.T.'s mistaken

belief that the NMUST included Plaintiffs as beneficiaries. Yet, here too, Defendants improperly advocate for favorable inferences, arguing that it should be deemed unreasonable for Plaintiffs to rely on these acts of concealment. In addition to citing no authority for the proposition that a plaintiff is required to distrust a statement from someone who they reasonably trusted, Defendants ignore the additional allegations regarding Plaintiffs' follow-up and further cover-up by others. The PFAC plainly alleges that Plaintiffs asked on at least two additional occasions (in 2010 and 2016) about the promised disbursements, and each time were assured of their rights and given a facially legitimate explanation (*e.g.*, the assets were "frozen" due to the pendency of Winston's lawsuits concerning Y.C.'s share). (PFAC ¶ 91.) Because Plaintiffs were assured they would eventually receive distributions once the alleged freeze ended, the Court should not infer that Plaintiffs were on notice of potential legal claims "every year when they did not receive millions of dollars as promised." (MTD at 23.)

*Second*, Defendants have not met their burden of establishing that the existence of Winston's lawsuits and news articles about those lawsuits were enough to overcome the assurances made to Plaintiffs. While Defendants claim these lawsuits "would have 'clearly alerted' a reasonable person in Y.T.'s (and Plaintiffs') shoes 'to the possibility of' the wrongful conduct alleged here," the PFAC plainly alleges that Y.T. and Plaintiffs knew little about the lawsuits and understood that those cases had nothing to do with Y.T. or the disposition of Y.T.'s assets. Indeed, these lawsuits concerned *Y.C.'s estate*; what Winston believed *Y.C.'s assets* were; and what Winston believed he was entitled to as *Y.C.'s heir*.

As for the media coverage of Winston's lawsuits, Defendants have not (and cannot at this stage) establish that Y.T. or Plaintiffs were even aware of the specific articles submitted with Defendants' motion, much less that Y.T. or Plaintiffs should have been expected to have read them.

Defendants' reliance on *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94 (D.D.C. 2015), is therefore misplaced. (*See* MTD at 7-10.) In *Sandza*, the "scores" of articles from major news publications specifically discussed the plaintiff's law firm (which plaintiff irrefutably knew was facing financial struggles) and reported allegations regarding the firm's financial liabilities and management's efforts to conceal those liabilities from the partners. *Id*. at 113, n. 8. Those numerous articles thus reported on issues directly relevant to plaintiff's interests in a clear, tangible way. That is not the case here. Only two of the news articles specifically referenced by Defendants mention the NMUST at all, and none suggest Y.T. was mistaken about the terms or beneficiaries of the Trust. Defendants are asking this Court to draw unsupported inferences in their favor that Y.T. and Plaintiffs (i) knew about the details of the lawsuits to which none of them were parties; (ii) actually read, or should have read, these articles; and (iii) that reading these articles would have alerted them to their potential claims relating to Y.T.'s mistaken understanding about the terms of the NMUST.

Defendants also argue that Plaintiffs have submitted "contradictory allegations" by deleting from the PFAC a statement that Winston's litigation "received considerable media attention." (Opp'n at 3.) The PFAC is not "contradictory"; it instead clarifies precisely what Y.T. knew and, more importantly, did not know, regarding that litigation. (*See*, *e.g.*, PFAC ¶ 63.) Defendants' characterizing these clarifications to be a "contradiction" is further evidence that Defendants improperly seek to draw factual inferences from the pleadings.

Finally, Defendants posit that, had Y.T. and/or Plaintiffs diligently reviewed the U.S. court docket in Winston's litigation, they could have located the Declaration of Trust in those filings. (Opp'n at 24.) But this argument presupposes that Defendants have first satisfied their heavy burden of demonstrating that Plaintiffs should have been expected to understand that it was

*necessary* to review Winston's litigation more closely in the first place, which Defendants have not done for the reasons set forth above. Further, even if Defendants met that burden, dismissal is not appropriate here because courts do not require a party to "have scoured the public records in search of [relevant documents]." *Woodland Drive LLC v. Courtovich*, 2021 U.S. Dist. LEXIS 187721, at *17-18 (D.D.C. Sep. 30, 2021). Indeed, courts are loathe to grant dismissal based on purported information to be found in court dockets at such an early stage in the proceedings. *Germinaro v. Fid. Nat'l Title Ins. Co.*, 107 F. Supp. 3d 439, 452 (W.D. Pa. 2015) (public filings do not "establish the untimeliness of Plaintiffs' RICO claim as a matter of law").

#### ***3. Defendants Have Not Met Their "Heavy Burden" Of Establishing That Plaintiffs' Inquiries Were Not Reasonable***

Even if Defendants had met their burden of establishing that Plaintiffs had reason to conduct an inquiry on any of the identified dates, dismissal is inappropriate (and Defendants' futility argument therefore fails) because it is not proper to begin running the statute of limitations the moment these alleged "red flags" occurred. Where there is no actual notice, the statute of limitations begins to run only after a reasonable investigation would have alerted plaintiff to a cause of action. *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 32-33 (D.D.C. 2007). This is a highly factual question, not clear from the face of the complaint, *Capitol Servs. Mgmt. v. Vesta Corp.*, 933 F.3d 784, 791 (D.C. Cir. 2019) (quote omitted), and will likely be reserved for a jury. *Diamond,* 680 A.2d at 370.

The Amended Complaint alleges multiple facts regarding Plaintiffs' inquiries in response to the information available to them. These inquiries were reasonable because Plaintiffs were, at most, aware only that they were not yet receiving annual payments (*not* the real reason why that was the case), and that Y.C.'s family was engaged in disputes regarding Y.C.'s estate. Plaintiffs certainly were not privy to any evidence of wrongdoing, much less who may have committed it.

*See, e.g.*, *Bradley v. Nat'l Ass'n of Secs. Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 849 (D.C. Cir. 2005) (notice requires not only knowledge of injury but cause and identity of wrongdoer); *Capitol,* 933 F.3d at 793 ("inquiry notice of [defendant's] potential role [] is an open factual question that cannot be resolved at this early juncture.").

Because a reasonable fact finder could conclude that the facts alleged, taken in the light most favorable to Plaintiffs, demonstrate that Plaintiffs reasonably responded to the information available at the time but were stymied by acts of concealment, this case should not be dismissed on grounds that Plaintiffs were on inquiry notice prior to late 2019.[1]

## II. PLAINTIFFS' MISTAKE AND LACK OF AUTHORITY CLAIMS ARE GOVERNED BY LACHES AND ARE NOT TIME-BARRED

Equitable claims are governed by the doctrine of laches. *See In re Pro. Air Traffic Controllers Org*., 23 B.R. 271, 275 (D.D.C. 1982). Accordingly, Plaintiffs' mistake and lack of authority claims are not subject to a three-year statute of limitations period (or any limitations period), as Defendants contend. *Jackson v. Cash (In re Cash)*, No. 16-00663, 2018 Bankr. LEXIS 3322, at *32 (Bankr. D.D.C. Oct. 29, 2018) ("the statute of limitations is not strictly applicable to . . . a suit [raising such claims] in the District of Columbia.").

Defendants argue that courts do not apply laches where the equitable claims "aris[e] from the same conduct" as the legal claims. (Opp'n at 22.) However, courts in this district have rejected this approach, analyzing claims at law under the statute of limitations and equitable claims under the doctrine of laches. *See In re Cash*, 2018 Bankr. LEXIS 3322, at *32 (claims sounding in trust governed by laches but related claims for a lien governed by statutory limit). Further, Plaintiff's

[1] Plaintiffs' conversion claim did not accrue "immediately." (Opp'n at 22.) *See*, *e.g*., *Malewicz*, 517 F. Supp. 2d at 335 ("a claim for conversion accrues when the plaintiff demands the return of the property and the defendant refuses, or when the defendant takes some action that a reasonable person would understand to be either an act of conversion or inconsistent with a bailment.").

equitable claims are not based on the same conduct as their claims at law because mistake arises from "an error that prevents the trust from fulfilling the deceased's intent," *see, e.g.*, *Penn Mut. Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1212 (D.C. 1987), whereas the remaining claims are based on the improper influence exerted during the creation of the trust (Count III) and the unjust actions resulting from that transfer (Counts IV and V). Because the actions giving rise to these equitable claims are distinguishable, the claims are subject to laches, not a statute of limitations.

Defendants contend that even if laches applies, the equitable claims are barred. (Opp'n at 25-27.) But Defendants do not dispute that this is a fact-intensive inquiry not suited for a motion to dismiss. Even if the Court were to decide the issue at this early stage, laches is an equitable defense and not available where, as here, Defendants (and those controlling Defendants) caused the delay of which they now complain. Additionally, Defendants concede that the law requires them to demonstrate prejudice in order to benefit from a laches defense (Opp'n at 26), but this is yet another highly disputed factual issue that cannot be resolved now. Lastly, although Defendants contend that they have been prejudiced by the death of some witnesses and the purported faded memory of others (Opp'n at 26-27), Defendants have been actively litigating the propriety of the NMUST transfers for years in the Y.C. case. Having had no opportunity to repose, they cannot now claim prejudice.

## III. PLAINTIFFS' TAIWAN LAW CLAIMS ARE SUBJECT TO TAIWAN'S STATUTE OF LIMITATIONS

Defendants claim that, under D.C. choice-of-law principles, a non-forum's statute of limitations governs only where the specific limitations period is "prescribed by the statute that creates the cause of action." (Opp'n at 35.) This is an overly narrow statement of the law. A court in a diversity case must conduct a detailed analysis of law to decide whether a statute of limitations is intertwined with the establishment of the substantive legal right itself. *See Ekstrom v. Value*

*Health*, 68 F.3d 1391, 1395 (D.C. Cir. 1995). Defendants fail to consider whether Taiwan treats the 15-year statute of limitations found in its Civil Code as a substantive aspect of the relevant legal claims found elsewhere in the Code. Instead, they dub Article 125 of the Taiwan Civil Code a "statute of general application" and inappropriately compare it to the catch-all Florida statute in *Klayman v. Judicial Watch, Inc.*, No. 06-670, 2007 WL 1034936, at *4 (D.D.C. Apr. 3, 2007) (Opp'n at 35.) But Taiwanese law is quite different from Florida law and, as Taiwan law expert Professor Chang explains, the Taiwanese legislature chose to place the statute of limitations in Article 125 in the Taiwan Civil Code, which means that a Taiwanese court must treat it as a substantive component of each claim it governs. *See* Decl. of Professor Yun-Chien Chang ¶ 40 ("Chang Decl."). Defendants fail to conduct any analysis of Taiwanese law, and their only other cited authority did not analyze this issue.

## IV. EACH CLAIM IS BROUGHT ON BEHALF OF A PROPER PARTY

### A. Rule 17 Permits Plaintiffs To Bring Their Claims Of Conversion And Unjust Enrichment In Their Individual Capacities

Defendants argue that Rule 17 bars Plaintiffs' individual claims for conversion and unjust enrichment because Plaintiffs seek to "enforce [only] the interest that Y.T. allegedly had in the assets." (Opp'n at 13.) However, Plaintiffs bring these claims in their individual capacities in order to vindicate their rights and interests in FPC USA and Inteplast shares currently in Defendants' possession, *in addition to* separately pursuing claims on behalf of Y.T.'s estate. (*See*, *e.g.*, PFAC ¶¶ 118, 123.) Defendants further contend that Plaintiffs "cannot sue simply because [they] 'will ultimately benefit from the recovery.'" (Opp'n at 19.) But Plaintiffs' individual capacity claims seek direct recovery, including the enforcement of their direct interests in the assets improperly transferred to Defendants, and the payment of funds directly to Plaintiffs (and other heirs). (*See* PFAC ¶¶ 42-43.) Defendants have not asserted Rule 12(b)(6) as a basis for the purported futility

of the PFAC and, critically, fail to address the multiple factual allegations in the PFAC that clarify from where Plaintiffs' interests spring.

Whether Defendants agree that Plaintiffs possess any direct interests in the assets improperly held by Defendants is a dispute for another day. Rule 17 considers only whether a plaintiff is asserting his rights for his own benefit, not whether the plaintiff actually possesses the rights asserted. Thus, Rule 17 is satisfied where, as here, the plaintiff is bringing the action on his own behalf to vindicate what he contends are his own rights. This is made clear by the primary case upon which Defendants rely, *Best v. Kelly*, 39 F.3d 328 (D.C. Cir. 1994), which explains the proper application of Rule 17 as follows:

> Both the complaint and the amended complaint alleged violations of plaintiffs' constitutional rights, not Unfoldment's. *That is enough to render plaintiffs real parties in interest.* If the substantive law stands against these allegations, if it appears from the face of the complaint that the inmates do not have the rights asserted, Rule 12(b)(6) may be invoked. Dismissal then would properly be on the merits *rather than on the ground that the wrong party was prosecuting the action.*

*Id*. at 330 (emphasis added). Each of the remaining cases on which Defendants rely are therefore plainly distinguishable because they involve a plaintiff asserting rights *on behalf of another party*, not himself. *See, e.g.*, *Price v. Crestar Sec. Corp.*, 44 F. Supp. 2d 351, 354 (D.D.C. 1999) (husband cannot assert claim to vindicate wife's interest in shares); *Trudel v. SunTrust Bank*, 223 F. Supp. 3d 71, 78, 81 (D.D.C. 2016) (individuals cannot assert claim to funds they admit "belong[] to the estates or [another party]"); *Robinson v. Samuel C. Boyd & Son, Inc.*, 822 A.2d 1093, 1103 (D.C. 2003) (beneficiary cannot bring claim for breach of contract between personal representative and third party); *Labovitz v. Wash. Times Corp*., 172 F.3d 897, 901 (D.C. Cir. 1999) (shareholder cannot sue "for injuries suffered as a result of wrongdoing inflicted on a corporation"). Because Plaintiffs assert their own rights and interests in the subject assets, their individual claims satisfy Rule 17, regardless of whether Defendants dispute the ultimate merits of those claims.

### B. Equity Principles Allow Plaintiffs To Bring Claims On Behalf Of The Estate

Defendants concede that equitable principles allow a beneficiary to sue when there is no one available to sue on behalf of the beneficiary. (Opp'n at 16.) *See also* Restatement (Second) of Trusts § 282(3) (Am. Law Inst. 1959) ("if there is no trustee, the beneficiary can maintain a suit in equity against the third person, if such suit is necessary to protect the interest of the beneficiary."). Defendants also do not dispute that these principles generally apply to disputes involving estates. Defendants' attempt to sidestep the straightforward application of these principles relies on a hyper-technical and deeply flawed interpretation of those equitable principles as well as D.C. law.

Defendants contend that these equitable principles do not apply because there is no "missing" fiduciary that was once appointed and is now absent. (*See* Opp'n at 16.) Defendants find this sweeping exception somewhere between the lines of comment (g) to the Restatement of Trusts. (Opp'n at 16.) Comment (g) does not purport to provide an exhaustive interpretation of how this equitable principle may be applied, however. Moreover, comment (g) should not be interpreted to define the outer bounds of this broader equitable principle outside the context of trusts because it speaks only to the specific application of these principles to a *trust*—and because a trust possesses a trustee from the moment of its creation, there is no need for the Restatement to concern itself with scenarios in which a fiduciary never existed. Defendants' proposed interpretation would also substantially undermine the equitable principles they concede apply here. Rather than protecting beneficiaries from the inequitable situation in which "for whatever reason" their interests are not protected, (Opp'n at 16), Defendants manufacture an arbitrary distinction that denies protection to a party who *never* had this support in the first place.

Defendants also incorrectly claim that D.C. probate law bars the application of this equitable principle. (Opp'n at 14.) Although D.C.'s probate statute *grants* a personal representative the right to bring suit, Defendants cite no principle of D.C. law that prohibits an heir from

alternatively obtaining an equitable right to sue. Indeed, Defendants' entire argument turns on the word "only," but that term is found nowhere in the probate statute. (Opp'n at 14 (citing D.C. Code Ann. § 20-741).) Further, the cases cited by Defendants stand only for the limited proposition that where the "personal representative steps into the shoes of the decedent, only the [] personal representative can bring actions directly against a third party." (Opp'n at 15.) Defendants do not address whether equitable principles create a right to sue when *those shoes are empty*. In fact, the reasoning of Defendants' cases simply would not apply where no person had been appointed because they rest on the premise that, once a personal representative has been appointed, the rights and interests of the estate pass to that person, which prohibits other heirs from suing. *See Rearden v. Riggs Nat'l Bank of Wash., D.C.*, 677 A.2d 1032, 1037 (D.C. 1996). With no personal representative in place, no such restriction exists.

Defendants concede that there is no personal representative currently appointed under D.C. law who can bring an action on the estate's behalf. (Opp'n at 15.) Equity therefore requires that Plaintiffs be empowered to bring the instant action in order to protect the rights of the estate and the beneficiaries. To the extent Defendants fault Plaintiffs for not attempting to bring a proceeding in D.C. or Taiwan to appoint a representative, there is no such exhaustion requirement for asserting this equitable right. Plaintiffs would satisfy any exhaustion requirement, in any event, because as non-U.S. citizens, they cannot obtain an appointment as the representatives of the estate. *See* D.C. Code § 20-303(b)(5) (2007).[2] Defendants' repeated references to potential Taiwan probate

[2] Defendants' arguments may soon become moot because non-party Kevin Wang (grandson of Y.T. and son of Plaintiff Tony Wang, and a U.S. citizen) will seek appointment as the foreign personal representative of Y.T's estate in the probate division of the D.C. Superior Court. *See* Semko Decl. ¶ 4. If he obtains such an appointment, he can promptly be substituted as a plaintiff in this matter under Fed. R. Civ. P. 17. Thus, even if the Court were inclined to deny Plaintiffs their equitable right to bring claims on behalf of the estate, the Court "may not" dismiss the estate's claims without first allowing a "reasonable time" for the probate action to be resolved and for Kevin Wang to ratify, join, or be substituted. *See* Fed. R. Civ. P. 17(a)(3).

proceedings are also a red herring because Y.T.'s domestic assets in Taiwan have already been fully dispersed in accordance with 2016 settlement agreements among the heirs. (PFAC ¶ 88.) A Taiwan court will not open a domestic probate proceeding where, as here, there are no remaining assets in Taiwan to be adjudicated. *See* Chang Decl. ¶¶ 34-35.

If Plaintiffs are deprived of the equitable power to bring claims on behalf of Y.T.'s estate, Defendants will have ensured that the estate never gets the opportunity to address the serious injustices alleged with respect to the NMUST. There is also no risk of harm to non-Plaintiff beneficiaries because any recovery on the estate's claims would revert back to the estate for redistribution to Y.T.'s heirs. For all of these reasons, equity requires that Plaintiffs' claims on behalf of the estate be allowed to proceed.

## V. THE BERMUDA JUDGMENT DOES NOT PRECLUDE THE LITIGATION OF ANY ISSUES RELATED TO THE NMUST

Defendants' issue preclusion argument fails for reasons obvious in its very first sentence: the Bermuda judgment concerned "the establishment of the ***Bermuda purpose trusts***" and ruled on whether Y.T. "knew that his family members could not benefit ***from those trusts***." (Opp'n at 36) (emphases added).) As Defendants concede, issues related to the NMUST were not litigated in the Bermuda case, which addressed only "the validity of five Bermuda purpose trusts." (Bermuda Op. ¶ 4; Opp'n at 37.) In fact, the term "New Mighty" appears only once in the findings sections of the Bermuda court's 478-page opinion and, even there, the court makes only a tentative observation in *dictum* entirely consistent with the PFAC. (Bermuda Op. ¶ 434) ("it makes sense that YT's Second Family would have been given some indication that they stood to benefit in some way from the Bermuda Purpose Trusts (and perhaps the New Mighty Trust as well).")

Defendants nevertheless urge the Court to bar this entire case on grounds of issue preclusion due to similarities in the purported "central factual thesis" of both cases. (Opp'n at 36.)

But similar themes are not "identical" issues, as collateral estoppel requires, and cannot bar Plaintiffs from litigating—for the very first time—their claims against different defendants concerning a different trust, created at a different time and in a different country, with a different purpose and scope, different trust documents, different asset transfers, and a different governing law. And, even if the Court were inclined to entertain such a dizzying leap, it would be improper to make the required fact-intensive inquiry at this stage of the case. Equally troubling, if preclusion is applied to bar the instant suit, Plaintiffs will never have any opportunity to litigate their claims regarding the NMUST anywhere in the world.

### A. Ruling On Issue Preclusion Is Improper At This Stage

Ruling on issue preclusion is improper at the motion to dismiss stage except "[i]n the limited circumstances where the allegations of the complaint give rise to an affirmative defense [that] clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("These defenses are more properly reserved for consideration on a motion for summary judgment."); *see also Hurd*, 864 F.3d at 686 (reversing preclusion at the pleading stage and finding it improper "to take judicial notice of a fact merely because it has been found to be true in some other action") (citation omitted). It is undisputed that neither the Bermuda judgment nor any of its findings may be found on the face of the Complaint, nor would it be appropriate for this Court to take judicial notice of these disputed findings for the truth of the matter asserted. *Hurd*, 864 F.3d at 687. Defendants simply attach the judgment without offering any legal basis for its consideration at this stage.

Even if the Bermuda ruling were properly before the Court at this time, issue preclusion requires "a fact intensive inquiry that is to be made on a case-by-case basis," making it ill-suited for decision on a motion to dismiss. *Sloth v. Constellation Brands, Inc.*, 924 F. Supp. 2d 461, 471 (W.D.N.Y. 2013); *see also In re OpenPeak, Inc.*, 2020 Bankr. LEXIS 3463, at *87 (Bankr. D.N.J.

Dec. 10, 2020) (declining to conduct a collateral estoppel analysis at the motion to dismiss stage). Thus, it is unsurprising that Defendants fail to cite ***any*** case in which a motion for leave to amend a complaint was denied for futility based on issue preclusion. Defendants cite only two cases decided at the motion to dismiss stage, each with a unique posture in which the prior judgment was already squarely at issue. *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493 (D.C. Cir. 1983) (collateral estoppel related to issues decided in Florida defamation judgment plaintiff sought to enforce); *Bryson v. Gere*, 268 F. Supp. 2d 46 (D.D.C. 2003) (plaintiff sought to challenge arbitral award). Conversely here, the PFAC does not place the Bermuda judgment at issue, and an issue preclusion analysis will involve painstaking deliberation over hotly disputed issues of fact outside the four corners of the complaint, as well as foreign law.

### B. Defendants' Preclusion Argument Will Fail On A Motion To Dismiss

The affirmative defense of collateral estoppel requires a defendant to demonstrate the following elements: (i) the issues are identical; (ii) the issues have been decided in a prior action following a full and fair opportunity to litigate; (iii) a decision on the issues was essential to the judgment in the prior action; (iv) the parties to the two actions are substantially the same; (v) the preclusive effect of the prior determination was foreseeable; ***and*** (vi) no reason exists to doubt the quality, extensiveness, or fairness of the prior litigation. *Minebea Co. v. Papst*, No. 97-0590 (PLF), 2003 U.S. Dist. LEXIS 26664, at *6 (D.D.C. Feb. 4, 2003). Defendants satisfy none of these requirements.

#### *1. Defendants Fail To Establish That The Issues In This Case And The Bermuda Litigation Are Identical*

Defendants do not even attempt to argue that the specific issues to be decided in this case are "identical" to those decided in the Bermuda litigation. (Opp'n at 41.) This is fatal because Defendants' generalized assertions that Plaintiffs' "primary theory" is "substantially similar" to

issues litigated in Bermuda are legally insufficient. *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 168 (D.D.C. 2021) ("The party asserting collateral estoppel bears the burden of showing that an issue in question is ***identical*** to what was decided before.") (emphases added); *Ill. Farmers Ins. Co. v. Hagenberg*, 167 A.3d 1218, 1225 (D.C. 2017) ("similarity between the issues is insufficient"). In fact, Defendants ***cannot*** claim the issues are identical, because the Bermuda court ruled only on the facts and issues before it: those pertaining to the five Bermuda trusts (the "Bermuda Purpose Trusts"). For this reason, the lens through which the court and parties gathered, analyzed, and applied those facts to law gave no consideration to the NMUST or to D.C. or Taiwanese law applicable here. This is readily apparent for the three issues on which Defendants seek preclusion: Y.T.'s intent in establishing the NMUST; undue influence; and Mr. Hung's lack of authority. (Opp'n at 41.) While the Bermuda judgment opined on similar issues under Bermuda law, Defendants concede that it did so only "concern[ing] the Bermuda purpose trusts." (Opp'n at 37.) And Defendants omit that even in the Bermuda ruling, not all trusts were treated equally. (*See*, *e.g.*, Bermuda Op. ¶ 485.) (finding that Mr. Hung ***lacked*** authority to transfer Y.C.'s funds to Ocean View Trust). Similarly here, all relevant issues must be analyzed specifically as to the NMUST and with the benefit of discovery.

Defendants fail to argue that the Bermuda court considered or ruled on any issues specific to the NMUST. Instead, Defendants rely on the absurd argument that the PFAC somehow "confirms" that the Bermuda court's determinations "apply equally" here because the PFAC refers in places to the Bermuda Purpose Trusts together with the NMUST as the "Overseas Trusts" and includes a generic reference to "YT's 'overseas assets.'" (Opp'n at 37-38.) But the fact that the PFAC mentions the Bermuda Purpose Trusts in order to provide context, or uses a defined term for convenience, does not mean that Plaintiffs concede that all factual and legal issues related to

these trusts are identical. Likewise, as the PFAC alleges, the "overseas assets" transferred to the NMUST are necessarily distinct from any assets transferred to the Bermuda Purpose Trusts. (*See, e.g.*, PFAC ¶ 127.) (alleging transfers of 113,808 FPC USA shares and 32,000 Inteplast shares).

Nor can Defendants satisfy their burden by citing self-serving examples of evidence referenced in the PFAC that the Bermuda court purportedly rejected when ruling on the validity of the Bermuda Purpose Trusts. (Opp'n at 38-40.) Defendants claim these "findings"—all of which are pending appeal in Bermuda—should bind Plaintiffs because courts analyzing issue preclusion "consider whether there is 'substantial overlap' between the evidence or argument . . ..'" (Opp'n at 38.) But this is just one consideration among several suggested by the Restatement (Second) of Judgments to resolve a "difficult" call; none of the other considerations—same rule of law, discovery that incorporated the matters in the second action, and closely related claims—support a finding that the issues decided in Bermuda are the same here. Restatement (Second) of Judgments § 27 cmt. c (Am. Law Inst. 1982). Such significant differences leave no room to find that purportedly preclusive determinations are "identical" to issues in a subsequent action. *See, e.g.*, *Minebea*, 2003 U.S. Dist. LEXIS 26664, at *78 (no identity of issues where different law applied, despite "same basic disputes over ownership"). Defendants cite nothing to the contrary—their sole case involved a plaintiff's attempt to hold different defendants liable for the very same distribution of partnership funds that an arbitrator had already specifically determined was not improper. (*See* Opp'n at 41 (citing *Bryson*, 268 F. Supp. 2d at 58).) Plaintiffs are not simply swapping defendants. Rather, the Court is asked to determine the impropriety of transfers of entirely different assets to an entirely different entity in different transactions than those at issue in Bermuda.

#### ***2. Defendants Fail To Establish That The Issues For Which They Seek Preclusion Were Essential To The Bermuda Judgment***

Defendants must show that each issue for which they seek preclusion was "essential" and

not merely collateral to the Bermuda judgment. *Lans v. Adduci Mastriani & Schaumberg, L.L.P.*, 786 F. Supp. 2d 240, 303 (D.D.C. 2011) ("the judgment, 'not the court's opinion explicating the judgment' is what matters"). Defendants entirely miss the point of this analysis: instead of explaining how and why specific issues were essential to the elements of any particular claim decided by the Bermuda court, they cite only to the court's generalized descriptions of the "nub" of the complaint and the "central factual thesis." (Opp'n at 44.) In any event, Defendants refer exclusively to the court's descriptions of certain allegations pertaining to the Bermuda Purpose Trusts and fail to explain how they are directly relevant here. Indeed, in declining a discovery application for documents related to the NMUST, the Bermuda court said it best: "the relevance of the [NMUST] documents to the present action appears to be limited and inspection has not been shown to be 'necessary' in the requisite legal sense. ***The New Mighty documents may shed light on a 'piece of the jigsaw', but not an essential or even an important piece***." (*See* Bermuda Ruling on Specific Disc. Application ¶ 51, attached as Exhibit A to Semko Decl.) (emphases added).)

To the extent Defendants suggest that the Bermuda court's findings may be interpreted so broadly as to encompass findings vis-à-vis the NMUST, their argument would still fail. The Bermuda court may have decided those issues with respect to the Bermuda Purpose Trusts but had no need to decide their application to the NMUST. That is the hallmark of a non-essential issue. *Bollinger*, 594 F. Supp. 903 at 910-11 (declining preclusion where first court "could have decided the issue before it without any reference to the [entity]" at issue in the second suit).

### ***3. Defendants Fail To Show That Issues Were Actually Decided Following A Full And Fair Opportunity To Litigate And That Preclusion Was Foreseeable***

"[A]mong the most critical guarantees of fairness in applying collateral estoppel, a.k.a. issue preclusion, is the guarantee that the party to be estopped had not only a full and fair opportunity but an adequate incentive to litigate 'to the hilt' the issues in question." *Hurd*, 864

F.3d at 680 (quotations and citation omitted). Defendants point to the length of briefing in the Bermuda litigation (Opp'n at 42), but ignore its scope. Tony not only lacked the incentive to litigate "to the hilt" issues of the validity of the NMUST, he had no opportunity to litigate such issues at all and now faces the prospect that he will never have any opportunity to litigate NMUST claims.

As the Supreme Court has acknowledged, the fairness requirement is at issue "where the second action affords . . . procedural opportunities unavailable in the first action that could readily cause a different result," including the ability "to engage in full scale discovery or call witnesses." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 & n.15 (1979). While the problem is "particularly acute" for offensive estoppel, since a defendant "typically will not have chosen the forum," such "differences in available procedures may sometimes justify not allowing a prior judgment to have estoppel effect in a subsequent action event between the same parties, or where defensive estoppel is asserted against a plaintiff who has litigated and lost." *Id*. at 331 n.15. That is particularly apt here, where Tony did not choose the Bermuda forum, but joined as an additional party to an existing lawsuit. (*See* PFAC ¶ 96.)

Similarly, while Defendants argue "it does not matter that [they] were not parties" in Bermuda because mutuality is not a strict requirement for defensive collateral estoppel (Opp'n at 44), the "obvious absence of mutuality" does "place[] a heavy burden on movant" to show a full and fair opportunity to litigate. *Hawaiian Paradise Park Corp. v. Becker*, 314 F. Supp. 1133, 1134 (D.D.C. 1970). Thus, a court may decline to apply collateral estoppel, even where the *same issue* was decided against the plaintiff in a first suit (which is not the case here), where different defendants in the first suit created a "primary significance" that "may well have prevented a full review of all circumstances surrounding the [relationship with the defendant in the second suit]" that would "now [be] brought into direct focus by the allegations of the complaint." *Id.* The

Bermuda Purpose Trusts took "primary significance" in the Bermuda litigation to such a degree that Tony had no opportunity in Bermuda to obtain discovery of any type from the Defendants. Nor did the Bermuda court permit him to obtain discovery from any party concerning issues relating specifically to the NMUST because such issues were not relevant to the Bermuda litigation. (*See* Semko Decl. Ex. A, ¶ 36) ("[T]he advice given in relation to the formation of the Bermuda trusts is far more relevant to claims against such entities than the advice given in relation to the formation of the New Mighty Trust, which is not a Defendant herein."). This is precisely the type of procedural difference that the U.S. Supreme Court warned would make the application of issue preclusion unfair. *Parklane*, 439 U.S. at 331, 331 n.15; *see also Depp v. Heard*, 108 Va. Cir. 382, 387 (Va. Cir. Ct. 2021) (no full and fair opportunity to litigate where defendant testified as a witness in UK proceeding but was not subject to the same discovery rules as named parties).

Similarly, because there was no opportunity to explore issues specifically related to the NMUST in the Bermuda litigation, it was hardly foreseeable to Plaintiffs that the Bermuda action would preclude Plaintiffs from exploring the validity of the trust in D.C. Defendants fail to even address the foreseeability requirement, much less analyze whether it was foreseeable that the Bermuda litigation against the Bermuda Purpose Trusts would effectively bar a suit against an entirely different trust, and, therefore, cannot carry their burden of demonstrating all required elements of estoppel. *See Minebea*, 2003 U.S. Dist. LEXIS 26664, at *6.[3]

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for leave to amend their Complaint.

[3] For these same reasons, comity considerations are not relevant here. (Opp'n at 45) (admitting that comity does not apply unless there has been a full and fair opportunity to litigate).)

DATED: November 16, 2022

BAKER & McKENZIE LLP

By: ______________________________

Jennifer Ancona Semko (Bar No. 481119)
jennifer.semko@bakermckenzie.com
Graham Cronogue (Bar No. 1044036)
graham.cronogue@bakermckenzie.com
815 Connecticut Avenue, N.W.
Washington, DC 20006
Tel: +1 202 452 7000
Fax: +1 202 416 7055

and

Cyrus Vance (admitted *pro hac vice*)
cyrus.vance@bakermckenzie.com
Laura Zimmerman (admitted *pro hac vice*)
laura.zimmerman@bakermckenzie.com
452 Fifth Ave.
New York, NY 10018
Tel: +212 626 4875

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2022, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

Jennifer Ancona Semko