**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KEVIN WANG
6F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,
*as the appointed personal representative of the estate of Wang, Yung-Tsai,*

WANG, VEN-JIAO (TONY)
6F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

CHOU, YU-MEI
2F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

WANG, HSIUE-HUEI (TAMMY)
3F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

and

WANG, HSIN-JANG (JANIS)
4F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

*Plaintiffs*,

v.

NEW MIGHTY U.S. TRUST,
NEW MIGHTY FOUNDATION and
CLEARBRIDGE LLC,

*Defendants*.

Civil Action No. 21-3111-JEB

**Oral Argument Requested**

**DEFENDANTS' MOTION TO RECONSIDER**

Defendants New Mighty U.S. Trust, New Mighty Foundation, and Clearbridge LLC (collectively, "Defendants"), by and through the undersigned counsel, hereby move for

reconsideration of the Court's May 26, 2026 Order (ECF No. 89) pursuant to Federal Rule of Civil Procedure 54(b).

In support of this Motion, Defendants are submitting their Memorandum of Points and Authorities in Support of the Motion to Reconsider, dated June 30, 2026. Pursuant to Local Civil Rule 7(f), Defendants request an oral hearing on this Motion. Pursuant to Local Civil Rule 7(c), Defendants attach a proposed order.

WHEREFORE, Defendants respectfully request that the Court grant Defendants' Motion and enter an order dismissing the First Amended Complaint with prejudice or, in the alternative, dismissing Plaintiffs Ven-Jiao Wang ("Tony"), Yu-Mei Chou, Hsiue-Huei Wang ("Tammy"), and Hsin-Jang Wang ("Janis") (collectively, the "Original Plaintiffs") from this action with prejudice.

Dated: June 30, 2026

Respectfully submitted,
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

/s/ David B. Leland
David B. Leland
Bradley A. Klein
Christopher S. Herlihy
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
david.leland@skadden.com
bradley.klein@skadden.com
christopher.herlihy@skadden.com

John L. Gardiner
Andrew Muscato
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 735-3000
Facsimile: (917) 777-2000
john.gardiner@skadden.com
andrew.muscato@skadden.com

*Attorneys for Defendants New Mighty U.S. Trust, New Mighty Foundation and Clearbridge LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2026, the foregoing Motion to Reconsider, and attachments thereto and documents submitted in support thereof, will be filed with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Jennifer Ancona Semko
Graham Cronogue
Cyrus Vance
Laura Zimmerman
BAKER & MCKENZIE LLP
815 Connecticut Avenue, NW
Washington, DC 20006
T: (202) 452-7000
jennifer.semko@bakermckenzie.com
graham.cronogue@bakermckenzie.com
cyrus.vance@bakermckenzie.com
laura.zimmerman@bakermckenzie.com

*Attorneys for Plaintiffs Kevin Wang, Ven-Jiao Wang (Tony), Yu-Mei Chou, Hsiue-Huei Wang (Tammy), and Hsin-Jang Wang (Janis)*

Dated: June 30, 2026

/s/ David B. Leland
David B. Leland
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
david.leland@skadden.com

*Attorney for Defendants New Mighty U.S. Trust, New Mighty Foundation and Clearbridge LLC*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEVIN WANG
6F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,
*as the appointed personal representative of the estate of Wang, Yung-Tsai,*

WANG, VEN-JIAO (TONY)
6F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

CHOU, YU-MEI
2F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

WANG, HSIUE-HUEI (TAMMY)
3F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

and

WANG, HSIN-JANG (JANIS)
4F, No. 688 Mingshui Road
Zhongshan District, Taipei City, Taiwan,

*Plaintiffs*,

v.

NEW MIGHTY U.S. TRUST,
NEW MIGHTY FOUNDATION and
CLEARBRIDGE LLC,

*Defendants*.

Civil Action No. 21-3111-JEB

**Oral Argument Requested**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO RECONSIDER**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................... 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT .................................................................................................................. 4

I. THE FAC'S PLEADED JUDICIAL ADMISSIONS ESTABLISH THAT THE BERMUDA JUDGMENT PRECLUDES THIS ACTION ........................................ 4

II. ALTERNATIVELY, THE COURT SHOULD REACH THE MERITS OF DEFENDANTS' RULE 17(a)(1) ARGUMENT AND DISMISS THE ORIGINAL PLAINTIFFS AS PARTIES ................................................................................ 9

A. The Court Should Have Considered the Merits of Defendants' Argument that the Original Plaintiffs Are Not Real Parties in Interest and Should Be Dismissed ........................................................................................ 10

B. The Court Should Dismiss the Original Plaintiffs as Not the Real Parties in Interest ........................................................................................................ 14

CONCLUSION ............................................................................................................. 16

## TABLE OF AUTHORITIES

Page(s)

### CASES

*American Wildlands v. Kempthorne*,
530 F.3d 991 (D.C. Cir. 2008) .......... 13

*Bassett v. Walsh*,
No. 22-2408 (JEB), 2023 WL 4999176 (D.D.C. Aug. 4, 2023) .......... 7

*Best v. Kelly*,
39 F.3d 328 (D.C. Cir. 1994) .......... 14, 16

*El Paso Natural Gas Co. v. United States*,
750 F.3d 863 (D.C. Cir. 2014) .......... 7

*Global Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) .......... 14

*Heard v. United Healthcare/Optum Health*,
No. 24-cv-00108 (TSC), 2025 WL 973498 (D.D.C. Mar. 28, 2025) .......... 15

*Hernandez v. Cook County Sheriff's Office*,
634 F.3d 906 (7th Cir. 2011) .......... 13, 14

*Jahr v. District of Columbia*,
968 F. Supp. 2d 186 (D.D.C. 2013) .......... 6

*Mahoney v. United States Capitol Police Board*,
566 F. Supp. 3d 22 (D.D.C. 2022) .......... 3, 4, 10

*Robinson v. Samuel C. Boyd & Son, Inc.*,
822 A.2d 1093 (D.C. 2003) .......... 15

*Rogers v. Johnson-Norman*,
466 F. Supp. 2d 162 (D.D.C. 2006) .......... 7

*Ruffin v. District of Columbia*,
No. 22-2341 (JEB), 2023 WL 10553598 (D.D.C. June 16, 2023) .......... 4

*Trudel v. SunTrust Bank*,
223 F. Supp. 3d 71 (D.D.C. 2016) .......... 15, 16

*Washington Post Co. v. Special Inspector General for Afghanistan Reconstruction*,
No. 18-2622 (ABJ), 2021 WL 4502106 (D.D.C. Sep. 30, 2021) .......... 13

**STATUTES**

D.C. Code § 20-105 ....................................................................................................15

**RULES**

Fed. R. Civ. P. 17 ....................................................................................................14

**OTHER AUTHORITIES**

18 *Wright & Miller's Federal Practice & Procedure* § 4417 (3d ed., Westlaw updated 2026) ....................................................................................................8

Defendants New Mighty U.S. Trust (or the "Trust"), New Mighty Foundation ("NMF"), and Clearbridge LLC ("Clearbridge") (collectively, "Defendants") respectfully submit this Memorandum of Points and Authorities in Support of their Motion to Reconsider pursuant to Federal Rule of Civil Procedure 54(b) (the "Motion"). Pursuant to Local Civil Rule 7(f), Defendants respectfully request oral argument.

**PRELIMINARY STATEMENT**

Defendants respectfully request that the Court exercise its discretion to reconsider two aspects of its May 26, 2026 Order (ECF No. 89) (the "Order"). The Order granted in part and denied in part Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 85) (the "Motion to Dismiss") for the reasons set forth in the Court's Memorandum Opinion of the same date (ECF No. 90) (the "Opinion"). The Opinion overlooked dispositive points in the Motion to Dismiss pertaining to issue preclusion and real party in interest.

***First***, the Court declined to find that the Bermuda Supreme Court's 471-page judgment (the "Bermuda Judgment") precludes this action, even though it comprehensively resolved case-determinative issues of fact and, by extension, rejected the very grounds on which Plaintiffs' claims rest. Although agreeing that "[c]ommon sense" supports preclusion, this Court nevertheless felt constrained to apply a "stringent, perhaps even formalistic, standard[]" and conclude that the issue in this case is not the same as the one litigated in the Bermuda action. Opinion at 18. Defendants respectfully submit that this finding rests on a misapprehension—namely, that "the two cases concern entirely different trusts," *id.*, even though the First Amended Complaint (the "FAC") itself alleges that (i) the New Mighty U.S. Trust was an integral part of the planning and formation of the collective "Overseas Trusts," *e.g.*, FAC ¶¶ 38, 64, 158; and (ii) the New Mighty

U.S. Trust was contemporaneously planned and formed with two of the Bermuda Trusts, *id.* ¶¶ 70, 72.

Critically, the FAC's pleading describes the New Mighty U.S. Trust together with the Bermuda Trusts as the monolithic "Overseas Trusts," *id.* ¶ 9, and admits that Yung Tsai Wang ("Y.T.") created all of those trusts collectively to implement the same objectives in the same manner, *e.g.*, *id.* ¶¶ 64, 158. Accordingly, by Plaintiffs' own judicial admissions in the FAC, the Bermuda court's findings concerning the formation of the Bermuda Trusts necessarily apply to the formation of the New Mighty U.S. Trust. The Bermuda court's findings completely undermine the pleaded factual predicates for Plaintiffs' claims concerning the New Mighty U.S. Trust's exclusion of family benefits. Without those factual predicates, which are precluded as a matter of law, the FAC must be dismissed in full.

***Second***, and in the alternative, the Court should reconsider its decision not to decide whether the Original Plaintiffs[1] are real parties in interest who can continue in this action.[2] Contrary to the Court's findings in the Opinion, Defendants, in their Motion to Dismiss, renewed their request that the Court dismiss the Original Plaintiffs because they are not real parties in interest as to the claims asserted in the FAC. Indeed, as far back as February 2022, Defendants raised the point that only Y.T.'s personal estate representative is the proper plaintiff to bring the claims asserted in this action. After Kevin Wang's ("Kevin") appointment as the sole personal representative authorized to represent Y.T.'s estate (a decision that itself remains the subject of an

---

1 The "Original Plaintiffs" refers to Y.T.'s Second Family: Madam Yu-Mei Chou ("Madam Chou") and her three children with Y.T., Ven-Jiao Wang ("Tony"), Hsiue-Huei Wang ("Tammy"), and Hsin-Jang Wang ("Janis").

2 Should the Court reconsider and dismiss this action based on issue preclusion, the Court need not reach this second ground for reconsideration.

appeal),[3] Defendants renewed their request that the Court dismiss the Original Plaintiffs because they are not real parties in interest as to any of the claims in the FAC. Despite Kevin's appointment, the FAC continues to name the Original Plaintiffs as parties, and the Original Plaintiffs purport to join with Kevin in asserting Counts Six through Ten.

The Court mistakenly declined to consider Defendants' real-party-in-interest argument on the basis that Defendants "halfheartedly raise[d] [it] a beat too late." Opinion at 16. This finding overlooks that Defendants promptly raised this issue over four years ago and renewed their position in their Motion to Dismiss, which included a nearly four-page section outlining why the Original Plaintiffs must be dismissed from this action. ECF No. 85, at 29–33. Defendants recounted the procedural history in which the Court held this action in abeyance for nearly three years after Defendants initially raised the issue in their first motion to dismiss. Defendants have presented this issue repeatedly and in a timely and proper manner, and, respectfully, the Court should have addressed its merits and found that the Original Plaintiffs are not proper parties to this action.

## LEGAL STANDARD

Because the Order is "an interlocutory order, Federal Rule of Civil Procedure 54(b) governs the Court's analysis" of the Motion. *Mahoney v. U.S. Capitol Police Bd.*, 566 F. Supp. 3d 22, 25 (D.D.C. 2022) (Boasberg, J.). A party seeking reconsideration under Rule 54(b) "has a somewhat lower bar to clear" than under Rules 59(e) or 60(b), "as 'reconsideration of an

---

[3] *In re Estate of Wang Yung-Tsai*, No. 25-PR-0778 (D.C.) (appeal from No. 2021-ADM-1622 (D.C. Super. Ct., Prob. Div.)) (First Family's appeal challenging the order appointing Kevin Wang as personal representative of Y.T.'s D.C. estate).

interlocutory decision is available under the standard 'as justice requires.''" *Id.* (citation omitted). This standard "affords courts wide latitude and substantial discretion." *Ruffin v. District of Columbia*, No. 22-2341 (JEB), 2023 WL 10553598, at *1 (D.D.C. June 16, 2023) (Boasberg, J.). "The court's task, essentially, is to determine 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'" *Id.* (citation omitted).

Applying the "as justice requires" standard, this Court has granted reconsideration where it has found that it overlooked an important point or reached an incorrect conclusion. *See, e.g.*, *id.* at *2 (granting reconsideration following partial denial of motion to dismiss and dismissing additional claim where original opinion relied on "allegations of sex and age discrimination" that "should play no role in determining whether [plaintiffs] adequately pled a factual basis for liability" under the relevant statute); *Mahoney*, 566 F. Supp. 3d at 30–31 (granting reconsideration of dismissal order and reinstating claim "[w]ith the benefit of additional briefing" on an issue that the plaintiff "treated . . . as an afterthought at best in his Opposition [to the motion to dismiss]" after concluding "[i]n a final reckoning" that the complaint "contains sufficient allegations" to state a claim).

## ARGUMENT

### I. THE FAC'S PLEADED JUDICIAL ADMISSIONS ESTABLISH THAT THE BERMUDA JUDGMENT PRECLUDES THIS ACTION

In declining to hold that the Bermuda Judgment precludes Plaintiffs' claims, the Court considered only "the first prong of analysis: is the issue in this case the same as the one previously litigated in Bermuda?" Opinion at 17. The Court answered that question in the negative, on the mistaken basis that "the two cases concern entirely different trusts," stating as follows: "While the Bermuda court made judgments and findings exclusively as to the <u>Bermuda</u> trusts, this case is about Y.T.'s intentions as to the <u>American</u> trust." *Id.* at 18.

In so framing the issue, the Court overlooked that Plaintiffs themselves have pleaded—in both their original Complaint and FAC—that the New Mighty U.S. Trust and the Bermuda Trusts are not "entirely different trusts," *id.* Instead, they are collectively pleaded as the "Overseas Trusts" that Y.T. established with uniform intent and objectives. As a result, by Plaintiffs' own judicial admissions, both this action and the Bermuda action involve precisely the same underlying issues concerning Y.T.'s intent.

The FAC's allegations consistently join the New Mighty U.S. Trust with the Bermuda Trusts and treat them as an undifferentiated whole created by Y.T. with the same overarching intent. The FAC expressly groups the New Mighty U.S. Trust with the Bermuda Trusts as the "Overseas Trusts," a defined term used throughout its allegations. *See*, *e.g.*, FAC ¶ 9. Indeed, the FAC scarcely mentions the New Mighty U.S. Trust specifically in its key allegations, except to reiterate that the "Overseas Trusts" include the New Mighty U.S. Trust. *See*, *e.g.*, *id.* ¶¶ 87–88, 94, 100, 110, 115, 118, 134–36, 147, 149.

The reason for the FAC's presentation and its framing of the issues is apparent. The FAC refers to the "establish[ment of] an overseas trust structure for the equal benefit and control of his children" as "the *only instruction that Y.T. ever gave*." *Id.* ¶ 64 (emphasis added); *see also*, *e.g.*, *id.* ¶ 3 ("Y.T. also provided instructions to carry out these intentions during his lifetime through the establishment of overseas trusts to hold certain key assets and corporate holdings, which he expected would benefit all of his children and over which he expected all of them to have an oversight role."); *id.* ¶ 38 ("[T]he Founders decided to set up the Overseas Trusts, which were intended to merely replace their arrangement with Mr. Hung. Y.T. and Y.C. viewed the structure of these trusts simply as a more sophisticated version of the nominee relationship they had with Mr. Hung.").

Consequently, Plaintiffs themselves have judicially admitted in their pleading that "the previously resolved issue" in the Bermuda Judgment is "identical to the one presented in the current litigation." *Jahr v. District of Columbia*, 968 F. Supp. 2d 186, 191 (D.D.C. 2013) (cited in Opinion at 18). It is certain—not merely "likely"—that "the question of intent as to each trust" does in fact "rise or fall together," Opinion at 18. And in expressly resolving the identical issue, the Bermuda court concluded that Y.T. was "not mistaken about the legal character of the Bermuda Purpose Trusts which were designed to support the Formosa Plastics Group ('FPG') and philanthropic objects, goals which were entirely consistent with [his] own Vision." Bermuda Op. ¶ 13(a). That holding applies to the New Mighty U.S. Trust—and fatally undermines the factual predicates for each of the claims pled in the FAC.

Simply put, the Bermuda court's extensive findings bar Plaintiffs from arguing that the evidentiary predicate of the FAC supports their claims. In this regard, Plaintiffs rely on four primary categories of evidence to prop up their overarching allegation that "Y.T. intended to create a structure that benefitted each of his children equally": (i) the "Main Principles" document prepared at the beginning of the planning process for all of the Overseas Trusts; (ii) the "April 2001 Memo" prepared shortly before the formation of the first Overseas Trust; (iii) Y.T.'s supposed "Wills and Declarations" prepared between 2009 and 2011; and (iv) Y.T.'s purported conversations with some of the Plaintiffs "in the early 2000s." FAC ¶¶ 158–59; *see also id.* ¶ 199.

Plaintiffs concede that each of these pieces of evidence applies to the Overseas Trusts as a whole—that is, they reflect Y.T.'s identical and uniform intent with respect to both the Bermuda Trusts and the New Mighty U.S. Trust. *See id.* (alleging that the documents evidenced Y.T.'s intent with respect to the "Overseas Trusts" as a whole); *see also*, *e.g.*, *id.* ¶ 49 (alleging that the "Main Principles" document "laid out a number of 'operating guideline[s]' for the formation and

management of the contemplated Overseas Trusts"); *id.* ¶ 59 (alleging that the "April 2001 Memo" "contemplated that all of the overseas companies and their assets would be placed into trusts that would be settled in accordance with the Main Principles document"); *id.* ¶¶ 96, 100, 102–03 (describing the supposed "Wills and Declarations" as reflecting Y.T.'s intent with respect to "his assets," "the Overseas Trusts," and "his overall estate"); *id.* ¶¶ 56–57, 69 (referring to Y.T.'s alleged conversations with some of the Plaintiffs concerning the "Overseas Trusts" and "the overseas assets"). Because the Bermuda court concluded that none of this evidence suggests that Y.T. intended that his children benefit from the Overseas Trusts, Plaintiffs are precluded from relying on any of it to support their claims in this action. *See* Bermuda Op. ¶ 396 ("Main Principles" document); *id.* ¶¶ 385(g), 424 ("April 2001 Memo"); *id.* ¶ 428 (supposed "Wills and Declarations"); *id.* ¶ 426 (alleged conversations with some of the Plaintiffs).

While Plaintiffs argue to the contrary, "[t]he chief impediments" to their argument "are their own pleadings." *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014). "[F]actual allegations in operative pleadings are judicial admissions of fact," and the allegations in the FAC "foreclose" Plaintiffs' position on the identity-of-issues prong. *See id.* at 876–77; *see also*, *e.g.*, *Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162, 169–71 (D.D.C. 2006) (relying exclusively on allegations in operative complaint to define the relevant issues and conclude that plaintiff's claims were precluded). Plaintiffs' strained, after-the-fact attempt to separate out the New Mighty U.S. Trust from the Bermuda Trusts in their briefing fails for the additional basic reason that "a complaint may not be amended by the briefs in opposition to a motion to dismiss," *Bassett v. Walsh*, No. 22-2408 (JEB), 2023 WL 4999176, at *6 (D.D.C. Aug. 4, 2023) (Boasberg, J.) (citation omitted).

In its Opinion, the Court pointed to certain of the Bermuda court's statements from its expansive judgment as "outlin[ing] the limited scope of its adjudication." Opinion at 18. However, in doing so, the Court ignored that while the Bermuda court adjudicated Tony's claims concerning the Bermuda Trusts, the Bermuda court necessarily resolved the factual matrix underlying the planning and formation of the Overseas Trusts as a whole (which also involved the New Mighty U.S. Trust). As explained above, Plaintiffs' own allegations confirm this. Because the Bermuda Judgment resolved the same factual issues that underpin the FAC, that adjudication is dispositive here and obviates the need to parse stray language from the broader context of the Bermuda Judgment.

In any event, this Court referred to statements of the Bermuda court that are different from the kind of "express identification of the issues that [the Bermuda court] has not decided" that ordinarily might affect the preclusion analysis. *Id.* (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4417 (3d ed.)). This Court first cited the Bermuda Judgment's one-paragraph articulation of its "principal conclusions," Bermuda Op. ¶ 13 (cited in Opinion at 18), which understandably did not mention the New Mighty U.S. Trust. This is distinguishable from the type of framing of the issues made by a prior court that can undercut a preclusion argument. 18 *Wright & Miller's Federal Practice & Procedure* § 4417 n.3 (3d ed., Westlaw updated 2026)) (listing three examples in which "the first court undertakes an express identification of the issues that it has not decided": (i) the court in the prior proceeding "said expressly that it was not deciding any issue bearing on any other legal claim the plaintiffs might have"; (ii) "express statements by the court deciding the first action that a particular issue was not being decided"; and (iii) an appellate court's "tak[ing] pains to make sure that a lower court on remand will understand the distinction between the issues decided and the issues left open").

Nor does the Bermuda court's discovery ruling that the Court cited undermine issue preclusion here. The Bermuda court restricted discovery into "otherwise privileged material" reflecting advice related to the formation of the New Mighty U.S. Trust. It did so for several reasons not affecting issue preclusion, including that requiring production would "prejudice[]" the Trust by "depriv[ing] [it] of the opportunity to have its claim to privilege adjudicated under District of Columbia law" and that the particular documents had "limited" relevance. ECF No. 86-2, at ¶ 51. Elsewhere, however, the Bermuda court found that there was no "credible suggestion that the advice given in relation to the [New Mighty U.S. Trust] was likely to have been strikingly different" from that provided with respect to the Bermuda Trusts and explained that "the most likely position appears to be that the advice was broadly the same." *Id.* ¶ 36. The Bermuda court further credited the plaintiff's "persuasive case as to why documents in connection with the formation of New Mighty Trust would be desirable or helpful and/or is relevant." *Id.* ¶ 52. When fully considered, the Bermuda court's discovery ruling actually lends further support to issue preclusion here.

For all of these reasons, and because Defendants have satisfied the remaining prongs to sustain issue preclusion, *see* ECF No. 85, at 40–51; ECF No. 87, at 17–24, the Court should reconsider its Order and dismiss this action in full with prejudice based on issue preclusion.

## II. ALTERNATIVELY, THE COURT SHOULD REACH THE MERITS OF DEFENDANTS' RULE 17(a)(1) ARGUMENT AND DISMISS THE ORIGINAL PLAINTIFFS AS PARTIES

The Court declined to consider the merits of Defendants' argument that the Original Plaintiffs should be dismissed from this action because they are not real parties in interest. In doing so, the Court stated that Defendants "seem[] to suggest at times that the original Plaintiffs . . . should be dismissed from the suit entirely as not real parties in interest, leaving Kevin as the only Plaintiff[, but] . . . it is not until the Reply that Defendants suggest that this might serve as an

independent Rule 17 objection." Opinion at 15–16. The Court then concluded that it "will not dismiss those Plaintiffs under a challenge that NMUST only halfheartedly raises a beat too late." *Id.* at 16.

Contrary to the Court's determination, Defendants have raised the real-party issue from this action's inception, asserting that the Original Plaintiffs are not real parties in interest and should be dismissed from the case. Respectfully, the Court should correct this mistaken finding, reach the merits of the argument, and dismiss the Original Plaintiffs as parties. *See, e.g.*, *Mahoney*, 566 F. Supp. 3d at 31 (reconsidering decision "[i]n a final reckoning" after examining the merits of the moving party's argument).

**A. The Court Should Have Considered the Merits of Defendants' Argument that the Original Plaintiffs Are Not Real Parties in Interest and Should Be Dismissed**

The Court overlooked that Defendants have argued that the Original Plaintiffs are not real parties in interest from their first responsive filing up to and including their Motion to Dismiss.

In their initial motion to dismiss, filed over four years ago, Defendants asked the Court to dismiss the Original Plaintiffs' claims because they are not the real parties in interest. ECF No. 14 (opening brief), at 26–32; *id.* at 26 ("The claims, which belonged to YT during his lifetime, can be brought only by a duly appointed representative of YT's estate. Plaintiffs thus have no individual claims to bring."); ECF No. 29 (reply), at 18–20; *accord* Opinion at 5 (recounting that Defendants "moved to dismiss [the original complaint], arguing in part that Plaintiffs were not the real parties in interest and therefore could not bring claims on behalf of Y.T.'s estate"). Likewise, when the Original Plaintiffs first sought leave to file an amended complaint, Defendants contended that amendment would be futile because, among other reasons, the Original Plaintiffs were not the real parties in interest as to any of the amended claims. ECF No. 33, at 12–21. The Original Plaintiffs had full opportunity to address these arguments in their opposition to the Defendants'

original motion to dismiss and in their briefs filed in support of their motion for leave to amend their complaint.

The question whether the Original Plaintiffs are real parties in interest played a starring role at the December 2022 status conference. The Court there noted that it was "not terribly persuaded by [the Original Plaintiffs'] argument that you are okay right now on this [real-party-in-interest] issue." Dec. 12, 2022 Status Conference Tr. at 2:18–21. After counsel for Defendants urged dismissal of the action on this basis, the Court decided to "hold the case in abeyance" pending probate proceedings in which the Original Plaintiffs sought appointment of a personal representative of Y.T.'s estate. *Id.* at 6:23–7:13; *see also* Opinion at 15 ("When the Court stayed this case in December 2022, it did so with the intent of letting Plaintiffs appoint a representative, in part because Defendants had protested the absence of one."). The Court expressly acknowledged and preserved Defendants' ability, after the conclusion of probate proceedings, "to brief the proper party issue." Dec. 12, 2022 Status Conference Tr. at 7:11; *see also* Oct. 11, 2023 Status Conference Tr. at 7:12–15 (Counsel for Defendants: "[The Original Plaintiffs] are not the real parties in interest. In fact, they are relying on [Kevin] to seek the status, as a personal representative . . . , that's a concession, that they are not the real parties in interest.").

Nearly three years later, following Kevin's appointment as the personal representative of Y.T.'s estate and shortly before and after Plaintiffs' filing of the FAC, Defendants continued to argue that the Original Plaintiffs should be dismissed as parties because they are not real parties in interest. At the September 10, 2025 status conference, counsel for Defendants reiterated that "[i]f the current plaintiffs intend to stay in the case" following Kevin's requested joinder on behalf of Y.T.'s estate, "[the real-party-in-interest] issue hasn't been mooted" and remains "a threshold issue that . . . needs to be addressed." Sept. 10, 2025 Status Conference Tr. at 8:20–23; *see also id.* at

9:19–21 (noting Defendants' intent to "address the real party in interest issue with the current plaintiffs"). And far from raising it "a beat too late," Opinion at 16, Defendants devoted nearly four pages of their Motion to Dismiss to that argument, ECF No. 85, at 29–33. Nor was Defendants' discussion "halfhearted[]," Opinion at 16; the Motion to Dismiss walked through the relevant authority, allegations, and claims, ECF No. 85, at 29–33. Indeed, Defendants cited nearly two dozen supporting cases and statutory provisions in their brief. *Id.* Moreover, Defendants' prior presentation of the same argument had spanned twenty pages of briefing and the argument subsequently occupied two pages of Defendants' reply in support of the Motion to Dismiss, ECF No. 87, at 3–4.

While the Court observed that Defendants' argument in the Motion to Dismiss was "entirely embedded within their argument against relation back," Opinion at 16, that did not obscure their position. The argument heading of the subsection was straightforward and clear: "The Original Plaintiffs Were Not the Real Parties in Interest to Bring Claims Belonging to Y.T.'s Estate." ECF No. 85, at 29. And twice in that subsection Defendants expressly urged dismissal of the Original Plaintiffs. *Id.* at 30 ("The answer is that Kevin, as the personal representative of Y.T.'s estate in D.C., is the only proper plaintiff, and the Original Plaintiffs must be dismissed."); *id.* at 33 ("Because Kevin is the only person authorized under D.C. law to represent Y.T.'s estate in this litigation, the Original Plaintiffs must be dismissed."). The placement of the argument made good sense, too, because the question whether the Original Plaintiffs are real parties in interest affected the assessment whether Kevin's filing of the FAC related back to the filing of the original Complaint for limitations purposes. Moreover, Plaintiffs plainly understood that Defendants argued that "Rule 17(a) bars the Individual Plaintiffs from asserting their Taiwanese claims,

conversion claims, and unjust enrichment claims" and they set forth counterargument in opposing the Motion to Dismiss. ECF No. 86, at 22–23.

In sum, Defendants' argument in their Motion to Dismiss was very different from the kind of "fleeting statement in the parenthetical of a citation" or "cursory remark in a footnote" that is not "sufficient to raise a claim." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008); *see also*, *e.g.*, *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 911, 913–14 (7th Cir. 2011) (reversing district court's finding of waiver where defendants "briefly" raised an argument in their opening brief in support of summary judgment). The Seventh Circuit's decision in *Hernandez* is instructive. There, the Seventh Circuit reversed the district court's ruling that the defendants had waived their claim of qualified immunity where they had addressed it in only three paragraphs of their opening brief in support of summary judgment. *Hernandez*, 634 F.3d at 911, 913. The Seventh Circuit concluded that even their "cursory treatment of the qualified immunity issue" in that opening brief was sufficient to preserve the argument. *Id.* at 913. "The defendants' assertion in their opening brief of a qualified immunity defense was unambiguous." *Id.*

As in *Hernandez*, Defendants "unambiguous[ly]" stated in their Motion to Dismiss that "the Original Plaintiffs must be dismissed" "[b]ecause Kevin is the only person authorized under D.C. law to represent Y.T.'s estate in this litigation," ECF No. 85, at 33; *accord id.* at 30. *See Hernandez*, 634 F.3d at 913. And, indeed, unlike *Martinez*, Defendants' discussion of the real-party-in-interest argument—including in their reply, which the Court credited, Opinion at 16—was far more than cursory. Like *Hernandez*, moreover, "it is absolutely clear" that Defendants' Motion to Dismiss "supplied adequate notice" to Plaintiffs "and caused them no prejudice" given Plaintiffs' attempted rebuttal of Defendants' real-party-in-interest argument in their opposition brief. *See* 634 F.3d at 913; *see also*, *e.g.*, *Wash. Post Co. v. Special Inspector Gen. for Afghanistan*

*Reconstruction*, No. 18-2622 (ABJ), 2021 WL 4502106, at *20 (D.D.C. Sep. 30, 2021) ("Although plaintiff argues that defendant waived this argument because it did not assert this specific justification for the withholdings at an earlier stage in the proceedings, . . . plaintiff has had a full opportunity to brief its opposition, and the Court will consider the parties' positions on the merits."). Finally, whether the Original Plaintiffs are real parties in interest "has been at issue at every significant stage of this litigation" and justifies reconsideration all the more. *See Hernandez*, 634 F.3d at 914.

Consequently, Defendants adequately raised their argument that the Original Plaintiffs are not real parties in interest and should be dismissed from this action. The Court should address that argument on the merits on reconsideration. *See, e.g.*, *Glob. Health Council v. Trump*, 153 F.4th 1, 13 (D.C. Cir. 2025) ("[O]nce an argument is before us, it is our job to get the relevant case law right." (citation omitted)).

**B. The Court Should Dismiss the Original Plaintiffs as Not the Real Parties in Interest**

Upon reaching the merits, the Court should conclude that the Original Parties are not real parties in interest as to any claims in the FAC and dismiss them from this action. Since Defendants have presented this argument at length on multiple occasions, it is more briefly restated here.

Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). This is "the party who, by the substantive law, possesses the right to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Best v. Kelly*, 39 F.3d 328, 329 (D.C. Cir. 1994) (citation omitted). Kevin, as the personal representative stepping in the shoes of Y.T., "possesses the right to be enforced" in every claim in the FAC, even if the Original Plaintiffs might "ultimately benefit from the recovery." *See id.* (citation omitted). Each claim that the Original Plaintiffs assert rests on the central allegation that

the transfer of Y.T.'s assets to the New Mighty U.S. Trust was "legally ineffective" because Y.T. did not intend or authorize the supposed "exclu[sion]" of his children from "benefiting equally from the trust and its assets." *See, e.g.*, FAC ¶¶ 215, 219, 224–25, 229, 231, 241, 246.

So the Original Plaintiffs' claims depend on a finding that Defendants and nonparties wronged Y.T. by transferring and obtaining his assets against his will and without his authorization. Surely Y.T. could have raised these claims while he was alive. Now that he has passed, "[t]he ability to vindicate [his] rights . . . 'is conferred upon only one person, the personal representative, to the exclusion of all others.'" *Heard v. United Healthcare/Optum Health*, No. 24-cv-00108 (TSC), 2025 WL 973498, at *3 (D.D.C. Mar. 28, 2025) (citation omitted); *see also*, *e.g.*, *Robinson v. Samuel C. Boyd & Son, Inc.*, 822 A.2d 1093, 1103 (D.C. 2003) ("The personal representative is vested with legal title to both real and personal property owned by the decedent at the time of her death and 'has the same standing to sue as the decedent had at death.'" (citation omitted)); D.C. Code § 20-105 ("All property of a decedent shall be subject to this title and, upon the decedent's death, shall pass directly to the personal representative, who shall hold the legal title for administration and distribution of the estate."). The Original Plaintiffs, as potential "heir[s] to [Y.T.'s] estate," lack "standing to bring suit." *Robinson*, 822 A.2d at 1103. They cannot "point out how [they] have ever interacted with or held interests in the [assets] involved in this action." *Trudel v. SunTrust Bank*, 223 F. Supp. 3d 71, 82 (D.D.C. 2016) (Boasberg, J.). Accordingly, only Kevin "is a proper Plaintiff here, as [he] has been empowered by the Probate Division of the Superior Court to pursue claims that [Y.T.] would have possessed had [he] been alive." *Id.*

The Original Plaintiffs would turn Rule 17 on its head were a court to adopt their suggestion that a plaintiff may pursue claims so long as he is "asserting his own rights for his own benefit"—regardless whether he "substantively *possesses* the rights asserted." ECF No. 86, at 22. Whether

the plaintiff "possesses the right to be enforced," of course, has long been the sine qua non of the real-party-in-interest inquiry. *See Best*, 39 F.3d at 329 (citation omitted). After all, the dismissed plaintiffs in *Trudel* purported to assert their own rights and stood to benefit from any recovery, but this Court properly dismissed them and concluded that only the personal representative of the decedents' estates (and a joint accountholder) could pursue the claims. *See* 223 F. Supp. 3d at 82. The same result pertains here. "The only Plaintiff[] needed in this action" is Kevin "as personal representative to the estate[]." *Id.* The Original Plaintiffs should be dismissed. *See id.*

## CONCLUSION

For these reasons, Defendants respectfully submit that the Motion to Reconsider should be granted.

Dated: June 30, 2026

Respectfully submitted,
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

/s/ David B. Leland
David B. Leland
Bradley A. Klein
Christopher S. Herlihy
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
david.leland@skadden.com
bradley.klein@skadden.com
christopher.herlihy@skadden.com

John L. Gardiner
Andrew Muscato
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 735-3000
Facsimile: (917) 777-2000
john.gardiner@skadden.com
andrew.muscato@skadden.com

*Attorneys for Defendants New Mighty U.S. Trust, New Mighty Foundation and Clearbridge LLC*