UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VEN-JIAO (TONY) WANG, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NEW MIGHTY UNITED STATES TRUST, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 21-3111 (JEB)** |

**MEMORANDUM OPINION**

Family members of Taiwanese plastics magnate Yung Tsai (Y.T.) Wang — including three of his children, his second wife, and his estate's appointed personal representative, who is also his grandson — seek to void or reform an American trust that they allege was created and then heavily funded in violation of their patriarch's wishes. While their true quarrel lies with those who helped create the trust, they have sued the trust itself (New Mighty United States Trust), the company managing it (Clearbridge), and the trust's main beneficiary (New Mighty Foundation).

The Court previously ruled on Defendants' Motion to Dismiss, permitting all but one of Plaintiffs' claims to proceed. Defendants now ask it to revisit two aspects of its Opinion. First, they seek reconsideration of its holding on issue preclusion — namely, that a previous court finding on Y.T.'s intent as to his Bermuda trusts does not bind this Court's adjudication of his intent as to his American trust. Second, they urge the Court to address the merits of their argument that Y.T.'s children and wife — jointly "Original Plaintiffs" because they initially brought the suit without an estate representative — are not real parties in interest.

While Defendants have not established that the first determination was erroneous, they now convince the Court that they properly raised the real-party-in-interest issue in their prior Motion. Finding on reconsideration that Original Plaintiffs are not proper parties to the conversion claim, the Court will dismiss them from Count 7 while leaving the rest of its Opinion intact. The Motion will accordingly be granted in part and denied in part.

## I. Legal Standard

Federal Rule of Civil Procedure 54(b) provides that interlocutory decisions may be "revised at any time before the entry of a judgment adjudicating all the claims" in the action. Reconsideration of such decisions is "available under the standard 'as justice requires,'" which affords courts wide latitude and substantial discretion. Mahoney v. U.S. Capitol Police Bd., 566 F. Supp. 3d 22, 25 (D.D.C. 2022) (quotation marks and citation omitted); see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011). In essence, a court's task is to determine "whether [relief upon] reconsideration is necessary under the relevant circumstances." Lewis v. District of Columbia, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (citation omitted). Amorphous as that standard may seem, it is grounded in concrete considerations and "hardly [offers] a free pass." Mahoney, 566 F. Supp. 3d at 25; Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (noting that "as justice requires" standard entails considerations such as whether court "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court").

## II. Analysis

The Court will address the two issues for potential reconsideration in turn.

A. Issue Preclusion

As detailed in its prior Opinion, a portion of the Wang family's litigation landed in Bermuda. Wang v. New Mighty U.S. Tr., 2026 WL 1469391, at *1–2, *7 (D.D.C. May 26, 2026). There, two family members, including one of the Plaintiffs in this case, contended that Y.T. and his brother never intended to create trusts that did not benefit their families. Id. at *7. The Bermuda court disagreed; after analyzing a mountain of evidence, including several documents invoked by Plaintiffs in this case, it found at the end of an 80-day trial that the brothers had not been mistaken or misled. Id.; see, e.g., ECF No. 85-35 (Bermuda Judgment), ¶¶ 392–424, 436–44. According to Defendants, the Bermuda court's finding on intent — what they call "the gravamen" of the Amended Complaint — binds the Court here and justifies dismissal of the suit. See ECF No. 85 (MTD) at 41; see also ECF No. 94 (Recon. Mot.) at 6 ("It is certain — not merely 'likely' — that the 'question of intent as to each trust' does in fact 'rise or fall together.'") (quoting Wang, 2026 WL 1469391, at *8). In their view, that is because both cases hinge on certain documents and conversations already analyzed by the Bermuda court as part of its "extensive findings." Recon. Mot. at 6.

The Court previously declined to find issue preclusion on intent because the relevant issues — namely, Y.T.'s intent as to the Bermuda trusts and his intent as to the American trust — are not identical. Wang, 2026 WL 1469391, at *8–9; see also Athridge v. Aetna Cas. & Sur. Co., 604 F.3d 625, 634 (D.C. Cir. 2010) ("[I]ssue preclusion does not apply where issues are only similar, but not identical . . . ."). As the Court explained, under both federal and applicable state law, issue preclusion requires, among other things, that "the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case." Wang, 2026 WL 1469391, at *7 (emphasis added) (quoting Montgomery v. IRS, 40 F.4th 702, 709

(D.C. Cir. 2022)); see Colvin v. Howard Univ., 257 A.3d 474, 482–83 (D.C. 2021). True, resolution of this case might involve interpreting documents that the Bermuda court reviewed, see Wang, 2026 WL 1469391, at *8; MTD at 45–46, and Defendants remain free to argue at a later stage that the Bermuda court's fine-grained findings about particular documents should have preclusive effect. Cf. Restatement (Second) of Judgments § 27 cmt. j (Am. L. Inst. 1982) ("[E]ven if a fact is categorized as evidentiary, great effort may have been expended by both parties in seeking to persuade the adjudicator of its existence or nonexistence[,] and it may well have been regarded as the key issue in the dispute."). Relevant here, though, a single document can "supply evidence for two distinct issues — in this case, Y.T.'s intentions as to two distinct sets of trusts — without rendering the issues one and the same as a matter of law." Wang, 2026 WL 1469391, at *8. "Put more concretely," the terms of the American trust might be different, the advice Y.T. received about it might have been different, and, ultimately, his intentions for it might have been different. Id. The Court therefore concluded that dismissal based on the Bermuda court's intent finding was inappropriate. Id. at *8–9.

Defendants' argument for reconsideration largely recapitulates points from their Motion to Dismiss and does not reveal any error in the reasoning rehearsed above. Compare, e.g., Recon. Mot. at 8 (arguing for issue preclusion as to intent on ground that "the Bermuda court necessarily resolved the factual matrix" underlying both sets of trusts, including factual issues related to "Main Principles" document, "April 2001 Memo," Y.T.'s supposed "Wills and Declarations," and Y.T.'s alleged conversations with Plaintiffs), with MTD at 45, 47 (stating that the Bermuda court considered same documents "in light of the full factual matrix and the credibility of key witnesses") (quotation marks and citation omitted). One point bears further discussion, however. In their Motion to Dismiss, Defendants framed the Amended Complaint as

conceding that Y.T. had the same intent as to both sets of trusts because Plaintiffs did not plead "any theory" of why he might have held different beliefs about different trusts. See MTD at 41–42. In their Motion to Reconsider, Defendants repackage their argument in terms of "judicial admission[]," arguing that Plaintiffs' manner of referring to the trusts in the Amended Complaint — as the "Overseas Trusts" collectively — demonstrates that this case and the Bermuda case "involve precisely the same underlying issues concerning Y.T.'s intent." Recon. Mot. at 5.

As Plaintiffs suggest, that is arguably a new theory not properly before the Court on a Motion to Reconsider. See ECF No. 103 (Recon. Opp.) at 4–6; see also Singh, 383 F. Supp. 2d at 101 (describing circumstances where reconsideration may be appropriate). Even assuming that it is a version of Defendants' broader concession argument, it does not move the needle. Inferring the answer to a potentially dispositive factual question from mere shorthand used in an Amended Complaint — and doing so to Plaintiffs' detriment — turns the Rule 12(b)(6) standard on its head. Animal Legal Def. Fund, Inc. v. Perdue, 872 F.3d 602, 610 (D.C. Cir. 2017) (stating that courts on motion to dismiss "must treat the complaint's factual allegations as true, must grant plaintiff the benefit of all reasonable inferences from the facts alleged, and may [grant] dismissal only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (citation omitted). Although not all of Plaintiffs' pleadings help their case against issue preclusion, the statements invoked by Defendants are far from fatal. See, e.g., Recon. Mot. at 5 (noting that Amended Complaint refers to "the establish[ment of] an overseas trust structure for the equal benefit and control of his children" as "the only instruction that Y.T. ever gave") (quoting ECF No. 84 (Am. Compl.), ¶ 64) (emphasis and alteration added in Motion). What is more, several of Plaintiffs' assertions specifically target the American trust, debunking the notion that they have pleaded identical factual

circumstances across the board. See, e.g., Am. Compl., ¶ 73 ("Y.T. never expressed any intent whatsoever to form a trust to hold his U.S. assets that excluded his children as beneficiaries. In fact, Y.T. never provided any written or oral consent to transfer his 50% share of the U.S. assets to the New Mighty U.S. Trust at all."); see also Recon. Opp. at 8.

The Court thus will not reverse its holding that at this stage the Bermuda court's finding on intent lacks preclusive effect. See Wang, 2026 WL 1469391, at *8.

B. Real Parties in Interest

Defendants also ask the Court to address the merits of their argument that Original Plaintiffs — that is, everyone but the estate's representative — should be dismissed from the case as not real parties in interest under Rule 17(a)(1), which provides that "[a]n action must be prosecuted in the name of the real party in interest." See Recon. Mot. at 9–10. Reasoning that such contention was "entirely embedded" in Defendants' relation-back argument and not raised as an "independent Rule 17 objection" until their Reply, the Court previously declined to consider it. Wang, 2026 WL 1469391, at *7.

Further briefing, however, has convinced the Court that Defendants did raise the issue in a manner that — while not optimal — was sufficient to warrant consideration on the merits. As an initial matter, they expressly moved to dismiss "pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(a)(1)." MTD at 1; see ECF No. 104 (Recon. Reply) at 10. In addition, they stated at the start of their argument section that they "move to dismiss the Original Plaintiffs as parties because every 'action must be prosecuted in the name of the real party in interest' in accordance with Rule 17(a)(1)." MTD at 18; see Recon. Reply at 9–10.

To be sure, the meat of their Rule 17(a)(1) argument in their Motion to Dismiss appears in the section on timeliness — in particular, within the discussion of whether the estate

representative's claims relate back to the filing date of the original Complaint. See MTD at 29–33. In certain respects, such placement makes sense. Given that the estate representative is now a party to all counts, dismissing Original Plaintiffs would not eliminate any counts in full, so the main upshot of the real-parties-in-interest point seems to relate to timeliness. Specifically, Original Plaintiffs' status bears on Defendants' contention that they were "never" the real parties in interest and "were not acting under an understandable mistake when they filed the original complaint," rendering "relation-back" relief unavailable. Id. at 33–34. Still, embedding an argument for dismissal of parties within a discussion of dismissal of claims for untimeliness risks obscuring the nature and scope of the relief sought.

Regardless, poor placement alone should not render dismissal unavailable. That is particularly true where, as here, a party articulates its request for dismissal alongside its substantive argument. See MTD at 29 (asserting in subheading within timeliness section that "Original Plaintiffs were not the real parties in interest to bring claims belonging to Y.T.'s estate") (formatting altered); id. at 33 ("Because [the estate representative] is the only person authorized under D.C. law to represent Y.T.'s estate in this litigation, the Original Plaintiffs must be dismissed."). The Court thus agrees with Defendants that it erred in determining not to consider this question in its prior Opinion.

Having decided to address Defendants' Rule 17(a)(1) argument, the Court will analyze whether Original Plaintiffs are real parties in interest with respect to the five claims that they now bring alongside the estate representative (Counts 6–10). See Am. Compl., ¶¶ 212–250.

Under Rule 17, the real party in interest "is the party who, by the substantive law, possesses the right to be enforced, and not necessarily the person who will ultimately benefit from the recovery." Best v. Kelly, 39 F.3d 328, 329 (D.C. Cir. 1994) (citation omitted).

Defendants argue that because only the estate representative has legal title to Y.T.'s assets and standing to enforce Y.T.'s rights in this case, Original Plaintiffs do not "possess[] the right to be enforced" and are therefore not real parties in interest with respect to any of their claims. See Recon. Mot. at 14–16 (quoting Best, 39 F.3d at 329).

The Court will analyze that position claim by claim because Rule 17 requires that an action be "brought by the person entitled under the governing substantive law to enforce the asserted right." Whelan v. Abell, 953 F.2d 663, 672 (D.C. Cir. 1992) (emphasis added). So, although neither Plaintiffs nor Defendants grapple with the relevant substantive law to argue the issue, the Court will do so, examining D.C. unjust-enrichment law, D.C. conversion law, and Taiwan law (briefly) in turn. See MTD at 29–33; Recon. Mot. at 14–16; ECF No. 86 (MTD Opp.) at 22–23; Recon. Opp. at 13–14; see also Wang, 2026 WL 1469391, at *10 (considering Counts 6 and 7 under D.C. law and Counts 8, 9, and 10 under Taiwan law).

1. *Count 6: Unjust Enrichment*

Plaintiffs maintain that Defendants have been unjustly enriched because they have benefited financially from an invalid trust. See Am. Compl., ¶ 213 ("Because Y.T.'s 50% share . . . is void or invalid[,] . . . Defendants have been unjustly enriched."); id., ¶¶ 214–219 (repleading facts supporting invalidity); id., ¶ 220 ("The result is that Defendants have been unjustly enriched by their receipt of Y.T.'s property intended to benefit all of Y.T.'s children."). In their telling, Defendants "continue to possess . . . property appropriately belonging to Plaintiffs" and have reaped benefits from such possession. Id., ¶ 220. Plaintiffs thus seek an order from the Court compelling Defendants to "return the improperly received assets or equivalent value to Plaintiffs and the remainder of Y.T.'s children." Id., ¶ 222.

Under D.C. law, unjust enrichment occurs when "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Glasgow v. Camanne Mgmt. Inc., 261 A.3d 208, 219 (D.C. 2021) (citation omitted). The first element is the pivotal one here. Its plain terms indicate that only the conferrer of a benefit can bring a claim for unjust enrichment against the conferee — so, Y.T.'s estate, not Original Plaintiffs.

The D.C. Court of Appeals, however, has made clear that the doctrine is considerably more flexible. Endorsing the Restatement approach, it clarified in Glasgow that when "a third party makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." Id. at 221 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 48 (Am. L. Inst. 2011)) (alterations adopted). That principle targets "cases in which a defendant is unjustly enriched by receipt of a benefit from a third party" — precisely the fact pattern alleged here. See Restatement (Third) of Restitution and Unjust Enrichment § 48 cmt. a (emphasis added). That is why, in cases where "[p]ayment is made to someone other than the intended recipient as a result of fraud or mistake," both the payor and the intended recipient often seek restitution, giving rise to a "two-party restitution contest." Id., § 48 cmt. b. In this case, the fact that the payor (the estate) and the allegedly intended recipients (Original Plaintiffs) are aligned in litigation does not change the calculus: the Restatement clearly contemplates claims brought by the latter. Allowing such claims, moreover, is consistent with the broader equitable function of unjust-enrichment doctrine — that is, to provide a remedy "when a person retains a benefit . . . which in justice and equity belongs to

another." Falconi-Sachs v. LPF Senate Square, LLC, 142 A.3d 550, 556 (D.C. 2016) (citations omitted).

Defendants' assertion that Original Plaintiffs do not, "by the substantive law, possess[] the right to be enforced" thus does not prevail as to unjust enrichment. See Recon. Mot. at 14 (quoting Best, 39 F.3d at 329). The Court will not dismiss Original Plaintiffs from Count 6 on that ground.

2. *Count 7: Conversion*

Plaintiffs further allege that Defendants are "liable for conversion . . . by virtue of their unlawful exercise of control over a property interest that . . . appropriately belongs to Y.T.'s children." Am. Compl., ¶ 226. They argue that the creators of the American trust excluded Y.T.'s children from benefiting from it without the authority to do so, repeating their allegations that the trust itself is invalid on multiple grounds. Id., ¶¶ 224–25.

The elements of conversion under D.C. law are "[1] an unlawful exercise, [2] of ownership, dominion, and control, [3] over the personalty of another, [4] in denial or repudiation of his right to such property." Poola v. Howard Univ., 147 A.3d 267, 284 n.17 (D.C. 2016) (citation omitted); see also id. ("[T]o prevail on a claim of conversion with respect to items of property, a plaintiff must have a legal interest in the property."). The question here is whether Original Plaintiffs allege a property interest that entitles them "under the governing substantive law to enforce" a right against conversion. Whelan, 953 F.2d at 672.

They do not. In support of their conversion claim, Plaintiffs assert that they have "a property interest" in certain shares of stock held in the trust. See Am. Compl., ¶ 226. But their factual allegations do not support the kind of interest necessary for a conversion claim, such as an ownership or possessory interest at the time of the alleged conversion. See Poola, 147 A.3d at

284 n.17, 285 n.18 (listing ownership and possessory interests as bases for conversion claims); Restatement (Second) of Torts § 224A (Am. L. Inst. 1965) (contemplating conversion claims brought by persons with possessory rights); Blanken v. Harris, Upham & Co., 359 A.2d 281, 283 (D.C. 1976) (favorably citing Second Restatement's definition of conversion). Indeed, the alleged conversion occurred during Y.T.'s lifetime, see Am. Compl., ¶¶ 9, 72–76, 224, when he himself — not his family members — owned the assets at issue and could have brought a claim for conversion based on that property interest. See id., ¶ 6 (alleging that relevant assets were Y.T.'s); see also id., ¶¶ 6, 35 (alleging that employee Wen-Hsiung Hung "serve[d] as a nominee to hold assets for . . . [Y.T.'s and his brother's] benefit" and that brothers "were the true owners of all three holding companies" and "shares and other property held by the holding companies"). The "hope of an expectant heir," by contrast, "is not property" and cannot alone support a conversion claim. See Restatement (Third) of Trusts § 41 cmt. a (Am. L. Inst. 2003); cf. Samm v. Martin, 940 A.2d 138, 141 (D.C. 2007) (stating that daughter had no legal interest in mother's property for purposes of conversion claim and no standing to sue on mother's behalf).

In addition, now that Y.T. has died and an estate representative has been appointed in D.C., that representative — again, not one of Original Plaintiffs — is the proper party to bring a claim alleging conversion of Y.T.'s assets during his life. See MTD at 30; Recon. Mot. at 14–16. Put another way, because the claim belonged to Y.T. in life, it belongs to his estate in death and "survives in favor of . . . [his] legal representative." D.C. Code § 12–101. That representative alone "is vested with legal title" to the property that Y.T. owned "at the time of [his] death" and "has the same standing to sue as [he] had at death." Robinson v. Samuel C. Boyd & Son, Inc., 822 A.2d 1093, 1103 (D.C. 2003); see also D.C. Code § 20–105; Douglas v. Lyles, 841 A.2d 1, 3 (D.C. 2004); cf. Est. of Manook v. Rsch. Triangle Inst., Int'l & Unity Res.

Grp., L.L.C., 693 F. Supp. 2d 4, 16 (D.D.C. 2010) ("[T]he capacity to represent the estate of a foreign decedent is governed by the law of the state in which the district court is held.").

In sum, unlike the plaintiffs who alleged violations of their own constitutional rights in Best v. Kelly — the case upon which Plaintiffs here principally rely, see Recon. Opp. at 13–14 — Original Plaintiffs effectively allege conversion of someone else's property. See Recon. Reply at 13–14 (citing Best, 39 F.3d at 329). The bare assertion that they "bring [their] claims in their individual capacities to vindicate their own rights and interests" offers nothing concrete. See Recon. Opp. at 13. As such, the Court concludes that they are not real parties in interest with respect to Count 7.

Original Plaintiffs attempt to forestall that result by arguing that Defendants picked the wrong rule. In particular, they argue that Defendants' proper-party objection is a Rule 12(b)(6) argument masquerading as a Rule 17(a)(1) defense, and that "Rule 17 considers only whether a plaintiff is asserting his own rights for his own benefit, not whether the plaintiff substantively possesses the rights asserted." MTD Opp. at 22; see also Recon. Opp. at 14 (arguing against "using Rule 17 as a substitute merits inquiry"). Inexplicably, they rely on Best for that proposition — the very case that says a claimant must, under Rule 17, "possess[] the right to be enforced." 39 F.3d at 329 (citation omitted); see also Toussaint v. Howard Univ., 2005 WL 6778614, at *2 (D.D.C. Nov. 8, 2005) ("The focus of a Rule 17 'real party in interest' inquiry is whether the party bringing the action is the same party that is legally, as opposed to factually, aggrieved.").

In any event, even if Defendants' argument is best understood as a Rule 12(b)(6) objection, such construal does not defeat it. The D.C. Circuit has made clear that "[a] real-party-in-interest defense can be raised as a Rule 12(b)(6) motion." Whelan, 953 F.2d at 672; see also

6A Wright & Miller's Federal Practice & Procedure § 1554 (3d ed. 2010) ("[A] real-party-in-interest objection closely resembles the defense of failure to state a claim for relief because it presupposes that plaintiff does not have the substantive right to enforce the claim being made."). Defendants here present their Rule 17(a)(1) argument in their Motion to Dismiss, which they filed "pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(a)(1)." MTD at 1.

Construing Defendants' argument as arising under Rule 12(b)(6) as well as Rule 17(a)(1), and applying the former's plausibility pleading standard, the Court finds that Original Plaintiffs' conversion claims must be dismissed, leaving only the estate representative to pursue Count 7. That is because, as explained above, Original Plaintiffs do not plausibly allege a property interest of their own that could support a claim for conversion under D.C. law. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotation marks and citation omitted); Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (stating that reviewing court need not accept as true "legal conclusion couched as a factual allegation") (citation omitted); cf. Trudel v. SunTrust Bank, 223 F. Supp. 3d 71, 82 (D.D.C. 2016) (finding dismissal of sons appropriate where "Plaintiffs cannot point out how those . . . sons have ever interacted with or held interests in the accounts involved in [the] action"). The Court will therefore dismiss them from Count 7 pursuant to Rules 12(b)(6) and 17(a)(1). Cf. SunTrust Bank, 223 F. Supp. 3d at 82 (reasoning that "[t]he only Plaintiffs needed" were estate representative and joint account holder).

3. *Counts 8, 9, and 10: Taiwan-Law Claims*

Because the Court will ultimately decline to blaze its own trail through the Taiwan Civil Code at this stage — as it declined to do before — it will discuss the Taiwan-law claims briefly

and in bulk. See Wang, 2026 WL 1469391, at *10 ("Defendants' sparse briefing — clocking in at just under four pages across three counts and two briefs — and submitted expert declaration are not enough to require dismissal of Plaintiffs' claims at this stage, especially in light of Plaintiffs' opposing declaration.").

The first two claims sound in unjust enrichment. In support of Count 8, Original Plaintiffs argue that they are entitled under Article 242 of the Taiwan Civil Code to "pursue unjust enrichment claims" that the nominee holding Y.T.'s assets "neglected to pursue . . . under Article 179 of the Taiwan Civil Code," which itself states that "[a] person who is benefited, without any legal ground, at the expense of others, is obliged to return the benefit." Am. Compl., ¶ 228. For Count 9, they maintain that they can pursue unjust-enrichment claims even if the nominee's actions transferring assets to the American trust are deemed "legally effective," on the ground that Article 183 of the Taiwan Civil Code obliges third-party recipients to return benefits that resulted from unjust enrichment. Id., ¶ 240. Finally, Count 10 — Plaintiffs' third Taiwan-law claim — alleges that the people controlling the American trust should have known that the transfer of assets was void and that under Article 113 of the Taiwan Civil Code, Original Plaintiffs are therefore entitled to recover assets sufficient to restore "the *status quo ante*." Id., ¶¶ 245–47, 250.

For purposes of Rule 17(a)(1), Defendants have done nothing to undermine Original Plaintiffs' contention that they are "person[s] entitled under the governing substantive law" — that is, the Taiwan Civil Code — "to enforce the asserted right[s]." Whelan, 953 F.2d at 672. Defendants contend that (1) "D.C. law determines who the real party in interest is even as to claims under foreign law," and (2) it permits only the appointed estate representative to represent Y.T.'s estate in this litigation. See MTD at 32–33; see also Recon. Mot. at 14–16. The first

premise, however, is inconsistent with the Rule 17 doctrine described earlier, which directs courts to consult the governing substantive law to determine whether, for example, parties other than the estate possess the right to be enforced. If so, Defendants' second premise — that under D.C. law, only the appointed representative can represent the estate — is inapposite.

It may well turn out that Taiwan law does not provide Original Plaintiffs with the rights that they purport to possess. But Defendants' relevant briefing is too barebones to justify dismissal on Rule 17 grounds. See MTD at 54–55 (not squarely addressing proper-party issue as to Counts 8 or 9); see also id. at 55 (contending that "Article 113 may be invoked only by a party to a void juridical act" and that neither Original Plaintiffs nor estate representative were parties to such act — but doing so in single paragraph, without drawing connection to Rule 17). Without more, the Court is not prepared to dismiss Original Plaintiffs from Counts 8, 9, and 10. That two of the counts sound in unjust enrichment, see Am. Compl., ¶¶ 228–30, 234, 240, 242, further dissuades the Court from doing so, given its earlier conclusion that Original Plaintiffs can pursue claims under D.C. law that are at least superficially similar.

## III. Conclusion

The Court will grant in part and deny in part Defendants' Motion to Reconsider, and it will modify its prior Opinion and Order to dismiss all Plaintiffs other than the estate representative from Count 7. Its prior decision will otherwise remain in effect. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 19, 2026